92 F.3d 1187
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Ervin R. HALL, Petitioner-Appellant,
v.
Pamela CARTER and Al C. Parke, Respondents-Appellees.
 No. 95-3033.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 23, 1996.*
Decided July 23, 1996.
 
 Before CUMMINGS, COFFEY, and FLAUM, Circuit Judges.
 
 ORDER
 
 1
 This case relates to an administrative decision of the Conduct Adjustment Board ("CAB") of the Indiana State Prison in Michigan City, Indiana to impose three years of disciplinary segregation on Inmate Ervin Hall ("Hall") as a sanction for violating prison rules. Hall filed a 28 U.S.C. § 2254 petition seeking relief from this sanction[1], alleging deprivations of due process in being sentenced to disciplinary segregation based on insufficient evidence and in violation of Indiana's prison regulations. Because Hall suffered no constitutional deprivation, we affirm the denial of his § 2254 petition.
 
 
 2
 The disciplinary proceeding that is the subject of this appeal stem from a November 17, 1994 incident occurring at the Indiana State Prison where Hall was serving a twelve-year sentence for robbery. On that day, Hall was stopped by correctional officer Frazier ("Frazier") and subjected to a pat down and strip search. Subsequently, as a result of this search, Hall was charged in a Conduct Report (R. at 17, Ex. A-2) for unlawfully possessing cocaine and marijuana.[2] According to this report, written by an assistant investigator named Andrew J. Paull ("Paull"), Frazier and officer Miller ("Miller"), observed a large substance-containing package taped under Hall's scrotum during the strip search Id. In his investigation report (R. at 17, Ex. A-3), Paull stated that during the strip search, "Offender Hall was observed with a large package, with substance inside it, taped under his scrotum;" that while Miller left the shakedown area to get gloves [to use to retrieve the package], "Offender Hall resisted Sgt. Frazier and removed the package and kicked it under the lockers;" that Miller then retrieved the package from under the locker; and that this package's contents subsequently tested positive for cocaine and marijuana. Id. Paull further reported that laboratory tests indicated that the recovered substance contained 28 grams of marijuana and 4.8 grams of cocaine.
 
 
 3
 On November 30, 1994, one day after receiving notice of these charges, Hall appeared with his lay advocate before the CAB which consisted of officer John Barnes ("Barnes"). At the hearing, Hall denied possessing the substance found in the plastic bag recovered from under the locker. (R. at 17, Ex. A-7.) He stated that he only had "gauze and tape on [his] penis" [purportedly for medical reasons] but that he never threw anything under a locker. Id. Despite Hall's request, officer Miller did not appear as his witness.[3] Instead, Miller provided a written statement that, rather than exculpate Hall, was consistent with what he reportedly told Investigator Paull. (R. at 17, Ex. A-4) (Miller stated that during the strip search he observed "a 'clear plastic bag' folded underneath offender Hall's ... scrotum area." He also stated that when he returned with gloves to complete the search, Frazier told him Hall had "somehow threw the small package somewhere." Finally, he stated that he then noticed "a 'small package' in clear plastic under one of the lockers"). Still, Miller stopped short of saying that he observed Hall kick something under the locker.[4] In any event, Hall was found guilty of possessing the drugs based on Barnes' review of the conduct report, the offender and lay advocate statements, the physical evidence, and the results of the laboratory tests identifying the substance as cocaine and marijuana. (R. at 17, Ex. A-1.) The CAB sanctioned Hall with three years of disciplinary segregation. (R. at 17, Ex. A-7.)
 
 
 4
 In the course of exhausting his administrative remedies, Hall submitted an affidavit from officer Miller that Hall claimed "complete[ly] contradict[ ] the chain of events alluded to by the Investigators [Paull's] third-party report." (R. at 17, A-16.) Yet, Miller's affidavit merely restated that when he returned to the shakedown area with a pair of gloves (without mention of his observations before his temporary absence) he did not see anything beneath Hall's scrotum but that he discovered a plastic package under a nearby locker. (R. at 17, Ex. A-17.) Accordingly, Hall's administrative appeals were denied. (R. at 17, Ex. A-15, A-34.)
 
 
 5
 Although Hall's petition claimed several grounds for relief (R. at 3), his appeal primarily takes issue with the district court's denial of his claim that he was denied his right to due process in regard to said disciplinary proceeding and sanction (1) because the Conduct Report, used in charging him, was prepared contrary to the standards of Indiana's Adult Disciplinary Policy Procedures ("ADPP"), and (2) because the evidence was insufficient to support the CAB's finding of guilt. In regard to these claims the district court found that the procedural prerequisites of Wolff v. McDonnell, 418 U.S. 539 (1974) and the evidentiary requirements of Superintendent v. Hill, 472 U.S. 445 (1985) were met. (R. at 22.) Thus, although the court acknowledged the Court's recent decision in Sandin v. Conner, 115 S.Ct. 2293 (1995), which held that a prisoner sanctioned to thirty days of disciplinary segregation was not deprived of "liberty" within the meaning of the Due Process Clause of the Fourteenth Amendment, the district court stated that Hall's claim failed under Wolff and Hill despite any effect from Sandin. Id.
 
 
 6
 Although by foregoing a Sandin analysis, the district court generously assumed that Hall alleged a liberty interest entitled to due process protection, Hall devotes much effort to show that he satisfied this threshold inquiry.[5] Indeed, Hall's arguments on appeal primarily seek to distinguish his case from that reviewed by the Court in Sandin to show that he was deprived of constitutionally protected liberty. The state argues Hall is not entitled to relief since under Sandin he does not have a protectable liberty interest at stake, and even if he did, he received all the process that was due. (Resp.'s Br. at 4).
 
 
 7
 Hall contends that he was deprived of constitutionally protected liberty without due process during a disciplinary proceeding that resulted in his disciplinary segregation sanction. In support of his position he alleges that prison officials violated an Indiana prison regulation that governs disciplinary proceedings. Specifically, he points to Section 13 of the ADPP which states that:
 
 
 8
 The Investigating Officer may not participate in a decision regarding the guilt or innocence of the offender. However, if an incident takes place that was not witnessed by staff but details are learned through an investigator then the investigator may prepare the Conduct Report."
 
 
 9
 (Pet.'s Br. at 17). Hall interprets this regulation as forbidding an investigator from preparing the Conduct Report unless the investigator witnessed the prisoner's alleged misconduct. Hall also infers that under this regulation a Conduct Report is a "decision regarding the guilt or innocence of the offender." Accordingly, Hall alleges a Section 13E violation based on Investigator Paull's preparation of the Conduct Report despite his non-witness status and despite the availability of two other witnesses (Miller and Frazier) who could have written this report. He acknowledges, however, that mere violations of state law do not entitle prisoners to federal habeas corpus relief. (Pet.'s Br. at 13, citing Estelle v. McQuire, 112 S.Ct. 475, 480 (1991).) He correctly states that "a prisoner is not entitled to the procedural protections of Wolff unless the specific mandatory language of the prison regulations created a liberty interest." Id. Hence, Hall points to the alleged violation of the prison regulation as the source for his liberty interest in not being sanctioned to disciplinary segregation without due process.
 
 
 10
 The Court in Sandin held that disciplinary measures taken against prisoners, even if they involve the taking away of an entitlement granted by a state statute or prison regulation, are not actionable as deprivations of liberty unless the measure "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 115 S.Ct. at 2300; Anderson v. Romero, 72 F.3d 518, 526 (1995). In effect, Sandin shifted the focus in due process cases based on alleged deprivations of liberty away from mechanical determinations of whether a regulation is mandatory or discretionary to determining whether the state's violation of the regulation resulted in the prisoner being subjected to an "atypical and significant" hardship without due process of law. See Sandin, 115 S.Ct. at 2300; Crowder v. True, 74 F.3d 812, 814 (7th Cir.1995). In finding that Connor's discipline in segregated confinement for thirty days did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest, the Court noted (1) the relatively short duration of the segregation, (2) the similarity between the conditions of Connor's confinement in disciplinary segregation and those conditions imposed upon other inmates,[6] and (3) the lack of any collateral consequences of the deprivation affecting the length of Connor's underlying sentence. Sandin, 115 S.Ct. at 2301-02.
 
 
 11
 Hall factually distinguishes his case from Sandin by arguing that his sanction of three years of disciplinary segregation constituted a much more significant deprivation than the thirty days imposed on Connor in Sandin. Although prior to Sandin this court once found that one year of segregation may infringe on constitutionally protected liberty, see Rowe v. DeBruyn, 17 F.3d 1047 (7th Cir.1994), we recently observed that "the difference in length need not be decisive." Bryan, 1996 WL 304857 at * 2. Rather, the length of the segregation must be viewed in light of the attendant conditions:
 
 
 12
 If the conditions of confinement in segregation were not so different from those of the general prison population as to "work a major disruption in his environment or equivalently, an "atypical, significant deprivation," then, however protracted, it would not count as a deprivation of liberty; the decrement of liberty would be too slight.
 
 
 13
 Id. Despite Hall's strong effort to distinguish the conditions of his segregation to the conditions imposed on his fellow prisoners in administrative segregation, protective custody, and in the general population, the district court made no factual findings on this issue. Thus, we do not have enough information to determine whether the conditions imposed on Hall during three years of disciplinary segregation amount to an "atypical, significant hardship." This would require a remand to determine, provided, there is some merit to Hall's claim that he was denied due process. Id.; Whitford v. Boglino, 63 F.3d 527, 533 (7th Cir.1995) (per curiam).
 
 
 14
 Beginning with Wolff, the Supreme Court established the minimum requirements of procedural due process to be afforded prisoners in disciplinary proceedings. Wolff, 418 U.S. at 563-67. Specifically, the Court held that prisoners deprived of liberty interests were entitled to (1) advance (at least 24 hours) written notice of the claimed violation; (2) the opportunity to be heard before an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence (when consistent with institutional safety); and (4) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action. Id.; Whitford, 63 F.3d at 534-37; Rasheed-Bey v. Duckworth, 969 F.2d 357, 361 (7th Cir.1992). Although Wolff did not specify the quantum of evidence necessary to support a disciplinary finding, the Court stated in Superintendent v. Hill, 472 U.S. at 454-55 that the minimum requirements of due process requires that the findings of the prison disciplinary review board be supported by "some evidence" in order to prevent arbitrary deprivations. Thus, our review of the sufficiency of the evidence to support the CAB's finding is highly deferential, Whitford, 63 F.3d at 537, for "prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances." Hill, 472 U.S. at 456.
 
 
 15
 As a consequence of devoting most of his briefs to distinguishing Sandin[7], Hall made few arguments in regard to the satisfaction of the Wolff standards. Instead, he argues that "the IDOC has extended [the Wolff protections] to be afforded a prisoner by the establishment of various regulations and policies." (Pet.'s Reply Br. at 9.) Again pointing to Section 13E of the ADPP, Hall insists that his due process rights were violated because Investigator Paull wrote the Conduct Report. Since violation of state law does not violate the Constitution, Estelle, 112 S.Ct. at 480; Rowe, 17 F.3d at 1051, we will give Hall the benefit of the doubt by broadly construing his arguments as a challenge under Wolff based on the lack of an impartial decision maker.
 
 
 16
 Section 13E forbids an investigating officer from participating in the decision regarding the guilt of the offender. To the extent that preparing the Conduct Report constitutes an unlawful "participation" in the decision regarding the offender's guilt, Hall could argue that he was denied an impartial decision maker. This argument would fail, however, since the Conduct Report is merely the charging instrument used to apprise the CAB of the allegations. If Investigator Paull prepared the Conduct Report and then sat on the CAB, the decision-making body in prison disciplinary proceedings, this could constitute a violation of Hall's due process rights. Whitford, 63 F.3d at 534; Merritt v. De Los Santos, 721 F.2d 598, 601 (7th Cir.1983) (noting that more than "tangential involvement" in the investigation disqualifies an officer from sitting on the adjustment committee). But since the evidence is clear that Investigator Paull did not sit on the CAB, which was solely comprised of officer Barnes, Hall was not deprived of an impartial decision maker by virtue of Investigator Paull's participation. Moreover, Hall has failed to show that due process requires one of the witnessing officers to write the Conduct Report. We also reject Hall's argument that Barnes who presided over the CAB hearing was not impartial since he failed to interview the witnessing officers. The record shows that at least one of these officers gave a written statement and that Barnes made an independent decision based on all the evidence submitted to the CAB. (R. at 17, Ex. A-7). Moreover, there is no evidence in the record that Barnes witnessed or was personally involved in the investigation or prosecution of the alleged incident. Redding v. Fairman, 717 F.2d 1105, 1113 (7th Cir.1983).
 
 
 17
 Finally, we consider Hall's argument that the CAB violated his right to due process by failing to support its findings with sufficient evidence. Due Process requires only that there be "some evidence" supporting the finding of guilt. Superintendent v. Hill, 472 U.S. 445, 454 (1985). A reviewing court is not to reweigh the evidence de novo. Viens v. Daniels, 871 F.2d 1328 (7th Cir.1989). The evidence against Hall consisted of the Conduct Report, Miller's written statement, Hall's statement, physical evidence, and the lab tests results. (R. at 17, Ex. A-7). Hall complains that the Conduct Report is not sufficient evidence since it was not written by a witness to the alleged incident. He points out that the policy behind the regulation forbidding third party Conduct Reports is to promote reliability and to ensure that CAB decisions are not based entirely on hearsay. Furthermore, he contends that by violating this policy the evidence is necessarily unreliable and insufficient to support a finding of guilt. The only evidence that Hall presented in defense were his denials that he possessed the drugs contained in the package retrieved from under the locker.
 
 
 18
 Investigator Paull's "third-party" report is corroborated by Miller's written statement presented to the CAB.[8] Miller stated that he observed a plastic package taped beneath Hall's scrotum and that when he returned with a pair of gloves to complete the search, officer Frazier told him that Hall had somehow managed to remove the plastic. Miller then searched the surrounding area and found a plastic package under a locker containing a substance that later tested positive for marijuana and cocaine. Although the record does not contain Officer Frazier's written statement, the evidence before the CAB constitutes "some evidence" required under Hill to support the findings. Since the CAB's finding was not arbitrary, it will not be disturbed. Meeks v. McBride, 81 F.3d 717, 719 (7th Cir.1996) ("[I]n the context of a prison disciplinary proceeding, due process is satisfied as long as 'the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.' ") (quoting Superintendent v. Hill, 472 U.S. 445, 457 (1985)). Accordingly, we AFFIRM the decision of the district court denying Hall's § 2254 petition.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary and the appeal is submitted on the briefs and record. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [1]
 This case is properly brought under 28 U.S.C. § 2254 since Hall is not merely challenging the conditions of his confinement (a claim that would arise under 42 U.S.C. § 1983) but rather is seeking release from a more to a less restrictive form of custody. Graham v. Broglin, 922 F.3d 379 (7th Cir.1991); See Bryan v. Duckworth, 1996 WL 304857 (7th Cir. June 7, 1996). Hall has satisfied the exhaustion requirement and has not forfeited his claims through procedural default since he exhausted all his of administrative remedies and since Indiana provides no judicial remedies for challenging prison disciplinary sanctions. Markum v. Clark, 978 F.2d 993, 995 (7th Cir.1992); See id. at * 1
 
 
 [2]
 In addition, Hall was served a criminal warrant charging him with possession of Cocaine, a class C felony, and possession of marijuana, a class A misdemeanor. Both charges were later dismissed for lack of evidence. Hall points to the dismissal of the criminal charges to bolster his argument that the CAB has insufficient evidence to find him guilty of violating prison rules
 
 
 [3]
 The notice for the hearing indicated that Hall requested Miller as a witness on his behalf to state that "Hall had no contraband on his person or immediate possession." (R. at 17, Ex. A-33.) Notably, Hall did not request officer Frazier as a witness although he now contends that the evidence was insufficient without Frazier's testimony since Frazier was the only officer who saw everything that happened
 
 
 [4]
 The state's brief attempts to link Hall with the discovered package by stating that "Officer Frazier saw Hall kick the plastic bag (formerly taped under Hall's scrotum) under a locker." (Resp.'s Br. at 11.) This overstates the record to the extent it is based on Paull's report or on Miller's written statement. The state likely found support for its statement in an anonymous unsigned report from one of Hall's administrative appeals. (R. at 17, Ex. A-15). According to this document, officer Frazier submitted a written statement as part of a "confidential report" to the CAB confirming Hall's possession of the drugs:
 Sergeant Frazier did write a statement of the incident and that statement is part of Confidential Report I.A. 94-ISP-139. It was reviewed by the Hearing Officer prior to your disciplinary hearing and it was reviewed for this appeal. It is clear Sergeant Frazier saw you in possession of the drugs and your attempt to get rid of the drugs, prior to Officer Miller's return with gloves to remove the plastic bag of drugs from under your scrotum.
 Id. Notably, there is no mention of Frazier's statement, confidential or otherwise, in the CAB's findings of fact. See (R. at 17, Ex. A-7).
 
 
 [5]
 In his opening brief Hall remarks that " '[l]iberty interest' is the main focus of the Respondent's position and Hall's position in this brief." (Pet.'s Br. at 11.)
 
 
 [6]
 It is not clear whether the segregation conditions at issue should be compared to the conditions in the general population of that particular prison or to those conditions present in the state's most secure prison. Bryan, 1996 WL 304857 at * 2
 
 
 [7]
 Indeed, Hall incorrectly assumes that the resolution of the Sandin issue in his favor entitles him to relief. He thus fails to realize that determination of a liberty interest is a threshold inquiry and that he would not be entitled to relief, even if he showed a deprivation of liberty, unless this deprivation was conducted without due process
 
 
 [8]
 In support of his argument that the evidence was insufficient, Hall notes that the formal charges against him were dropped after Miller's deposition testimony "contradicted" his written statement by admitting that he did not see Hall drop or kick the package under the locker. This testimony is consistent with Miller's previous statement. Thus, there is no need to order the record supplemented with Miller's deposition testimony. Furthermore, the outcome of the formal criminal charges for illegal drug possession is of no consequence to the administrative charges against Hall