**Jimmie TERRELL, Plaintiff,**

v.

**Salvadore A. GODINEZ,
et al., Defendants.**

**No. 95 C 4679.**

United States District Court,
N.D. Illinois,
Eastern Division.

June 3, 1997.

---

**6.** An identical phrase appears in the Daiwa 1992    SPD.

Jimmie Terrell, Joliet, IL, pro se.

Diann Karen Marsalek, James Charles Crowley, Ill. Atty. General's Office, Chicago, IL, Susan Takata, O'Leary, Ill. Dept. of Corr., Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

This matter is before the Court on Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons discussed hereafter, Defendants' motion is granted.

## I. BACKGROUND

Plaintiff Jimmie Terrell is serving a life sentence for murder. Currently, and at all times relevant to the instant suit, Terrell was incarcerated at Stateville Correctional Center in Joliet, Illinois. Terrell resides in cell 236 of F–House.

On August 25, 1994, correctional officers performed a routine shakedown of F–House. Dangerous contraband—such as metal rods, a metal club, and a knife—was found in the ventilation system accessible through Terrell's cell. Terrell was issued a disciplinary report for possession of the dangerous contraband.

On August 31, 1994, the Adjustment Committee found Terrell guilty and recommended punishment as follows: revocation of one year of good-time credit; denial of commissary for three months; denial of audio/visual for three months; one year at C-grade (he was at A-grade); and one year in segre-gation. Terrell disagreed with the findings of the Adjustment Committee and thus filed a grievance.

Terrell argued that the contraband was not his. He claimed that the ventilation system where the contraband was found was not only accessible through his cell, but also, seven other cells—the cell adjacent to his cell, the two cells one floor below his cell, the two cells one floor above his cell, and the two cells two floors above his cell. Thus, he argued that the contraband must have been placed in the ventilation system by an inmate in one of the seven other cells.

The grievance officer found much credibility in Terrell's position. He noted that Terrell had never been in this type of trouble in the past; in fact, Terrell had no violations for anything in several years. Furthermore, prior to the incident, Terrell requested that the ventilation cover in his cell be welded shut. The grievance officer therefore recommended a polygraph test.

As a result of the grievance officer's report, Terrell's punishment was reduced to three months of segregation (instead of one year), three months denial of audio/visual, three months at C-grade (instead of one year), three months of good-time credit revocation (instead of one year), and no denial of commissary privileges (instead of three months).

Still not pleased, Terrell filed a grievance with the Administrative Review Board on November 16, 1994. A polygraph examination was conducted on January 25, 1995. A hearing was held before the Administrative Review Board on February 7, 1995. On May 4, 1995, the Administrative Review Board received word that in the opinion of the polygraph examiner Terrell was lying, the contraband did in fact belong to him.

Based on the evidence submitted, the Administrative Review Board concluded that Terrell committed the violation and his grievance was therefore denied. His punishment, however, was reduced to sixty days in segregation only.

Terrell initiated the action in this court under 42 U.S.C. § 1983 claiming that he was deprived of a protected liberty interest with-

out due process of law. Defendants filed a motion for summary judgment.

## II. SUMMARY JUDGMENT— STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(c), summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Black v. Henry Pratt Co.*, 778 F.2d 1278, 1281 (7th Cir.1985). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Unquestionably, in determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Howland v. Kilquist*, 833 F.2d 639 (7th Cir.1987).

## III. DISCUSSION

The court finds that Terrell was not deprived of a protected liberty interest by being placed in segregation for sixty days; furthermore, even assuming a protected liberty interest was implicated, the court finds that Terrell was afforded due process of law.

### A. Liberty Interest

■ The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law...." An individual is not stripped completely of constitutional protections upon incarceration, i.e., he retains some due process rights, but, he obviously loses many of the protections afforded to ordinary citizens.

*See Rowe v. DeBruyn*, 17 F.3d 1047, 1049 (7th Cir.1994).

■ The seminal case as to whether Terrell's placement in segregation amounted to a deprivation of a liberty interest is *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). In *Sandin*, the Supreme Court noted that although most prison regulations are not intended to create liberty interests, in limited situations the regulations can indeed create federally enforceable liberty interests. *See Whitford v. Boglino*, 63 F.3d 527, 531 (7th Cir.1995) (citing *Sandin*, 515 U.S. at 479–81, 115 S.Ct. at 2298–99). The critical inquiry involves a comparison of the conditions of segregation with the conditions of confinement of the prison's general population. *See Bryan v. Duckworth*, 88 F.3d 431, 433 (7th Cir.1996) (analyzing *Sandin*). "If the conditions of confinement in segregation were not so different from those of the general prison population as to 'work a major disruption in his environment,' or equivalently an 'atypical, significant deprivation,'" then there was no deprivation of liberty. *Id.* (quoting *Sandin*, 515 U.S. at 485–86, 115 S.Ct. at 2301). But even if conditions in segregation are considerably harsher than those of the normal prison environment, "a few days or even weeks" of such considerably harsher conditions "might not" qualify as a deprivation of liberty. *See id.*

■ The court interprets the Seventh Circuit's analysis of *Sandin*—particularly the *Bryan* case—as creating a sort of balancing test. That is, the court must balance the harshness of the conditions in segregation (as compared to the conditions in the normal prison environment) with the amount of time spent in segregation. In other words, the greater the harshness (*i.e.*, the disparity between the conditions in segregation and the conditions in the normal prison environment) then the lesser the amount of time that need be spent in segregation to give rise to a liberty deprivation. Or, stated in yet another way, the lesser the harshness, the greater the amount of time that need be spent in segregation to give rise to a liberty deprivation.

With the balancing test in mind, the court analyzes the instant case. Here, as noted, the only punishment Terrell received for being charged with possessing dangerous contraband was sixty days in segregation. The conditions in segregation varied from the conditions of the general prison environment.[1] While in segregation, Terrell lost access to the prison yard where he exercised daily, he was unable to attend religious services which he attended on a weekly basis, and he lost his job where he worked daily.[2] Perhaps such losses could qualify as a major disruption in Terrell's environment. There is definitely something more than an insignificant amount of "harshness" present—particularly since he exercised and worked at his job on a daily basis. But, certainly, these are not considerably extreme variations in prison life.

Regardless, that's just one side of the scale. The other side is that he lost the privileges for only two months—not a very long time. Because of the short amount of time spent in segregation and the nonextreme nature of the lost privileges, the court finds that the scale of justice tips against finding a deprivation of a liberty interest. Accordingly, since Terrell was not deprived of a liberty interest, whether he received due process of the law is irrelevant.

### B. *Due Process*

Assuming Terrell was deprived of a protected liberty interest, he received due process; thus, no constitutional violation ensued. In *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Supreme Court set out the minimum requirements of procedural due process to be afforded prisoners in disciplinary proceedings. Before being deprived of a protected liberty interest, a prisoner is entitled to:

1) advance written notice of the claimed violation;

2) the opportunity to be heard before an impartial decision maker;

3) the opportunity to call witnesses and present documentary evidence; and

4) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action.

*Id.* at 563–67, 94 S.Ct. at 2978–80. Terrell concedes the first two requirements; he claims, however, that he was denied the opportunity to call witnesses and present documentary evidence (requirement # 3) and that there was inadequate evidence supporting the disciplinary decision (part of requirement # 4).

### 1. Presentation of witnesses and documentary evidence

Although Terrell claims that he was denied the right to call witnesses and present documentary evidence, his response to Defendants' motion fails to identify the witnesses that he would have called and documentary evidence that he was unable to present. Moreover, he fails to state what the witnesses would have testified to and what the documentary evidence would have established. Thus, he has not established that the outcome of the disciplinary proceeding would have been different. *See Stone–Bey v. Debruyn,* No. 95–3214, 1996 WL 665972 *2 (7th Cir. Nov. 14, 1996).

### 2. The evidence supporting the decision

Terrell argues that "there is absolutely no reliable evidence in the record that could support the conclusion reached by the disciplinary board." He is wrong.

Due process requires only that there be "some evidence" supporting the dis-

---

1. Defendants argue that the conditions in segregation were identical to the conditions outside of segregation. They, however, neglect to present any evidence—not even an affidavit—to support the assertion. Their allegation, therefore, will be ignored. *See Stone–Bey v. Debruyn,* No. 95–3214, 1996 WL 665972 *1 (7th Cir. Nov. 14, 1996) ("[T]he state does not cite to evidence in the record to support this contention; it merely alleges in its brief that '[w]ith a few minor differ-

ences, such as reduced recreation time and phone time, the conditions in disciplinary segregation are the same as in the protective custody units....' These allegations are insufficient....'"). Fortunately, Terrell's deposition testimony and affidavit provide the necessary information.

2. Sometime after his release from segregation, Terrell regained the same job.

ciplinary decision. *See Massachusetts Correctional Inst. v. Hill,* 472 U.S. 445, 455–56, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985). "Under *Hill,* the courts are barred from assessing the relative weight of the evidence." *Viens v. Daniels,* 871 F.2d 1328, 1335 (7th Cir.1989).

Here, the facts surrounding the discovery of the contraband presented the most compelling evidence that it belonged to Terrell. Indeed, the contraband was found after removing the vent cover located in his cell. Terrell argues strenuously that the prisoners in seven other cells had access to the ventilation shaft and could have placed the contraband in the ventilation system. That may be true, but the prison officials did not have to believe that the contraband was placed there by someone other than Terrell, *i.e.,* they did not have to believe Terrell's side of the story.[3] Remember, the court is prohibited from weighing the strength of the evidence. The court is concerned only with whether there is evidence supporting the disciplinary decision. The fact that contraband was found after removing the vent cover located in Terrell's cell is evidence that it belonged to him.

▮ Furthermore, Terrell failed the polygraph examination. Terrell notes that polygraph examinations are not infallible. He is correct, but that is not the issue. Failing a polygraph examination is further evidence against Terrell.[4] Once again, the court cannot reweigh the evidence.

## IV. *CONCLUSION*

The court finds that the disciplinary action against Terrell did not result in the deprivation of a protected liberty interest. Assuming a protected liberty interest was implicated, the court finds that Terrell was not denied due process of law.

Summary judgment is entered against Terrell and in favor of Defendants.

---

**3.** On page 63 of his deposition, Terrell states that he received a full hearing and was able to tell his defense.

**4.** "[P]olygraph test results are admissible in prison disciplinary proceedings." *Lenea v. Lane,* 882 F.2d 1171, 1174 (7th Cir.1989).