**Fabio A. DIAZ, Petitioner–Appellant,**

v.

**Jack R. DUCKWORTH, Respondent–Appellee.**

**No. 96–2630.**

United States Court of Appeals, Seventh Circuit.

Argued March 31, 1998.

Decided May 4, 1998.

Fabio A. Diaz, Santo Domingo, Rep. Dominicana, Petitioner–Appellant Pro Se.

Michael A. Hurst (argued), Office of the Attorney General, Indianapolis, IN, for Respondent–Appellee.

Tiffanie N. Cason, pro se, Cyrus Amir-Mokri (argued), Amarjeet Singh Bhachu, Skadden, Arps, Slate, Meagher & Flom (Illinois), Chicago, IL, for Amicus Curiae Tiffanie N. Cason.

Before POSNER, Chief Judge, and CUMMINGS and KANNE, Circuit Judges.

POSNER, Chief Judge.

■ Fabio Diaz was an inmate of an Indiana state prison (probably for a drug offense, although the record is unclear) when he instituted this habeas corpus action, claiming that he had been subjected to prison discipline in violation of his right to due process of law. The prison authorities had found that he had violated a rule of the prison forbidding inmates to use or possess drugs, and had "sentenced" him to (among other things) a loss of 180 days of good-time credit. The district court found no violation of due process, and so denied relief. Diaz appealed, and while the appeal was pending was deported to the Dominican Republic, where so far as we know he remains. The first and last question we decide is whether his deportation moots his appeal.

In arguing that it does not, he relies primarily on our decision in *Bryan v. Duckworth*, 88 F.3d 431 (7th Cir.1996), where we extended the rule of *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), to prison disciplinary proceedings. *Sibron* holds that if a convicted prisoner is released while his habeas corpus proceeding is pending, the case is moot only if the state proves that there is no possibility that the conviction will ever have an adverse effect on him, as by enhancing his sentence for some future crime. It seemed to us in *Bryan* that prison discipline was a close substitute for criminal proceedings, because disciplinary sanctions are frequently used to enhance subsequent sentences and disciplinary sanctions and to defeat parole. *Bryan v. Duckworth, supra*, 88 F.3d at 433.

But between *Bryan* and the argument of this appeal the Supreme Court decided *Spencer v. Kemna*, —— U.S. ——, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998), holding that the possible future effects of a parole revocation that were alleged by the defendant in that case were too speculative to keep his habeas corpus proceeding alive after he was released from the confinement brought about by the revocation. In the course of holding this, the Court spoke disparagingly of the cases that had led up to and followed *Sibron*, and of *Sibron* itself, see —— U.S. at —— – ——, 118 S.Ct. at 984–85, and it appears to have confined that decision to criminal convictions, saying that "it is an 'obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences.'" *Id.* at ——, 118 S.Ct. at 985, quoting 392 U.S. at 55, 88 S.Ct. at 1898–99. The only such consequences that *Spencer* deems relevant, moreover, appear to be statutory disabilities such as loss of the right to vote or the right to own a gun. Consequences that are within the power of the defendant to avoid—such as a sentencing enhancement, which presupposes his deciding to commit another crime—are excluded. *Id.* at —— – ——, 118 S.Ct. at 986–87.

The rule of *Sibron* is the rule placing the burden of proving absence of collateral consequences on the state. *Spencer* confined that rule to convictions, and so the extension of the rule, in *Bryan*, to disciplinary proceedings is no longer good law; for it cannot be said that most prison disciplinary sanctions "do in fact entail adverse collateral legal consequences," especially statutory disabilities, such as loss of the right to vote, that are automatic consequences of felony convictions.

The more difficult question is whether the burden of establishing collateral consequences of a judgment other than a conviction can, after *Spencer*, ever be carried when, as in *Bryan* and this case, the only consequences of which the defendant is complaining are contingent upon his committing future crimes or future disciplinary violations (such consequences as being subject to enhanced punishment for a future violation, by virtue of the punishment that he is challeng-

ing), as distinct from a case in which the disciplined prisoner shows that some statute or regulation attaches a disability to him that is not contingent on his future misconduct. *Spencer* suggests that the answer is no; we are sure that the answer is no when the defendant has not only been released but also deported.

To suppose that a future sentencing enhancement is *totally* avoidable by a convicted defendant is in the usual case to indulge reassuring fictions, but fictions nonetheless, about the American criminal justice system: that it is infallible, and that it is free from any element of strict liability. Innocent people are sometimes convicted and their convictions affirmed, and there are strict liability crimes and also crimes that have an element of strict liability, such as statutory rape committed in a jurisdiction in which reasonable ignorance of the victim's being underage is not a defense. And a person who has been convicted previously is more likely to be convicted erroneously in the future, because if he takes the stand he will be impeached by his previous conviction. So a convicted person may find himself convicted in the future without fault on his part, and if the first conviction was invalid he will be the victim of a double injustice.

Such cases are, we hope, rare; but in any event the concern about them dwindles to the vanishing point when the person who has been released is deported. Unless he commits an extraditable offense in the country to which he has been deported (as General Noriega was held to have committed an offense against the United States even though he was in Panama), as opposed to the more common case in which a person commits a crime in his own country, flees, and is later extradited to the country in which he committed the crime, he need have no fear of running afoul of the American criminal justice system unless he reenters the United States without the express permission of the Attorney General. And that is not only a crime, 8 U.S.C. § 1326, but a crime for which the possibility of being punished in error, or the possibility of committing the crime involuntarily and still being punished, is minute. Both commission of the crime and jeopardy by reason of being suspected of having committed it are very easily and securely avoided simply by not reentering the United States. It is a crime for which the "wrong" person is never punished. It is *conceivable* (what isn't?) that Diaz might be kidnapped and brought to the United States and there wrongfully prosecuted and convicted for reentering the United States, but the possibility is far too remote to comport with the new standard of the *Spencer* case.

█ *Spencer* as we read it tries to bring the law of habeas corpus into conformity with a general "hardening" of standing requirements in recent years. See, e.g., *Raines v. Byrd*, —— U.S. ——, —— – ——, 117 S.Ct. 2312, 2317–23, 138 L.Ed.2d 849 (1997); *United States v. Hays*, 515 U.S. 737, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). A basic principle of standing is that a person is not entitled to litigate in a federal court unless he can show a reasonable probability of obtaining a tangible benefit from winning. E.g., *Steel Co. v. Citizens for a Better Environment*, —— U.S. ——, —— – ——, 118 S.Ct. 1003, 1016–20, 140 L.Ed.2d 210 (1998); *Wisconsin Right to Life, Inc. v. Paradise*, 138 F.3d 1183 (7th Cir.1998); *Illinois Department of Transportation v. Hinson*, 122 F.3d 370, 372 (7th Cir.1997); *Free Air Corp. v. FCC*, 130 F.3d 447 (D.C.Cir.1997). Certainty is not required but a remote possibility won't do. E.g., *Shimer v. Washington*, 100 F.3d 506, 508 (7th Cir.1996); *North Shore Gas Co. v. EPA*, 930 F.2d 1239, 1242 (7th Cir.1991); *Fishbeck v. North Dakota*, 115 F.3d 580 (8th Cir.1997); *Mountain States Legal Foundation v. Glickman*, 92 F.3d 1228, 1234–35 (D.C.Cir.1996). That is all we have here, whatever may be the case of a person who having been released from confinement following conviction of a crime remains within the normal territorial jurisdiction of the American criminal justice system.

We are mindful of the Fifth Circuit's rejection of a "deportation exception" to *Sibron*. See *Umanzor v. Lambert*, 782 F.2d 1299, 1301 (5th Cir.1986). But that case was decided before *Spencer* and rests on the principle rejected there that "the 'mere possibility of

adverse collateral consequences is sufficient to preclude a finding of mootness.'" 782 F.2d at 1301, quoting *Sibron v. New York*, *supra*, 392 U.S. at 55, 88 S.Ct. at 1899. Whatever is left of *Sibron* is too little for a deportee to invoke, even if the deportee is complaining about a conviction, and not about a parole revocation, like Spencer, or a prison disciplinary sanction, like Diaz.

The appeal is dismissed as moot with instructions to the district court to vacate its judgment and dismiss the suit.