In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 23-2196

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

YARMELL AUSTIN,

*Defendant-Appellant.*

———————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:16-cr-00359-1 — **Mary M. Rowland**, *Judge.*

———————

SUBMITTED FEBRUARY 5, 2024 — DECIDED FEBRUARY 22, 2024

———————

Before ROVNER, BRENNAN, and KIRSCH, *Circuit Judges.*

ROVNER, *Circuit Judge.* Yarmell Austin completed his 70-month sentence of imprisonment for being a felon in possession of a firearm in violation of 18 U.S.C. §922(g)(1), on August 11, 2020, and began a three-year term of supervised release. In a February 3, 2023 special report, the probation office alleged that Austin violated his supervised release when he was arrested for burglary and possession of a controlled substance. The report also alleged that since December 2021,

Austin had also violated his conditions of supervised release by failing to work, seek work, or participate in a job training program. The probation office filed two more supplemental reports: one on April 18, 2023, documenting that Austin further violated his supervised release by testing positive for fentanyl, norfentanyl, and morphine on February 24, and another on May 30, 2023, noting that on May 18, he once again tested positive for amphetamines, fentanyl, and opiates. The probation office recommended that Austin's term of supervised release be revoked, and that Austin be sentenced to twenty-three months in prison with no supervised release to follow.

At his hearing on May 31, 2023, the Government agreed to dismiss the more serious violations of burglary and possession if Austin admitted to testing positive for illegal drug use, which he eventually did. The district court determined that Austin's guideline range of imprisonment for his supervised release violation would be eight to fourteen months. Without hearing from the parties, the court then announced a sentence of eight months in prison.

Realizing that it had not heard the positions of the parties, the court immediately rectified the error by inviting both parties to argue about the appropriate sentence. The Government argued for a fourteen-month sentence based on the two failed drug tests and the pending state charges. The probation office also weighed in, noting that Austin was reported to be experiencing heroin withdrawal symptoms while in jail after his arrest for burglary. Austin argued that he had completed two and a half of the three years of supervised release without any positive drug tests, and that he planned on contesting the state charges. Austin thus asked the court to impose a prison

sentence of two and a half months—the amount of time he had left in his term of supervised release.

After hearing from the parties, the district court judge remarked that Austin did well for the first two years of his supervised release, but expressed concern about his drug addiction and that he was "headed in the wrong direction." R. 134 at 13. Given Austin's violations, the court again determined that an eight-month prison sentence, with no further supervised release, was appropriate.

Austin filed an appeal on August 25, 2023, contending that the district court imposed a substantively unreasonable sentence of eight months' incarceration for violating his supervised release, and erred procedurally while doing so.

Austin, however, was released from custody on January 9, 2024—after the filing of the briefs, but before oral argument in this court. We therefore asked for supplemental filings from the parties addressing whether, "if he is released as scheduled, he will remain on supervised release or face any other collateral consequences from the judgment being challenged on appeal," and what would be the "proper disposition of the appeal in light of this information." App. R. 19.

We asked for this information because the Supreme Court has held that where a defendant challenges the revocation of parole, "[o]nce the convict's sentence has expired, … some concrete and continuing injury other than the now-ended incarceration or parole—some 'collateral consequence' of the conviction—must exist if the suit is to be maintained." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (*quoting Carafas v. LaVallee*, 391 U.S. 234, 237–38 (1968)). In *Spencer*, the Supreme Court found there were no collateral consequences where a defendant

challenged a lower court's decision to revoke his parole, specifically rejecting the argument that his parole revocation might be used against him in a future parole proceeding or sentencing. 523 U.S. at 13–15. Although *Spencer* addressed revocation of parole, and this case concerns revocation of supervised release, in a recent unpublished order, we noted that "[s]everal courts of appeals have held that the two situations should be treated identically, and we have not found any contrary decisions." *United States v. Madrigal*, No. 22-2140, 2023 WL 6890162, at *1 (7th Cir. Oct. 19, 2023) (collecting cases from the First, Second, Fourth, Fifth, and Tenth Circuits). We now conclude likewise in a published opinion.

Austin's supplemental memorandum concedes that "he was not sentenced to any further term of supervised release" and that he was "unaware of any other collateral federal consequences from the judgment being challenged on appeal." App. R. 20, Supp. Memo. 1. The closest he comes to asserting collateral consequences is that he has a "pending Cook County [Illinois] burglary case" and that "[c]onceivably the length and propriety of his sentence for violating his federal supervised release will be factored into what, if any, sentence he receives." *Id.* That, however, is not a collateral consequence under *Spencer*, where the Court specifically "rejected as collateral consequences sufficient to keep the controversy alive the possibility that the parole revocations would affect … the sentence imposed … in a future criminal proceeding." *Spencer*, 523 U.S. at 13 (cleaned up). The Court concluded that these "nonstatutory consequences [are] dependent upon the discretionary decisions made by … a sentencing judge, which are not governed by the mere presence or absence of a recorded violation of parole, but can take into consideration, and are more directly influenced by, the underlying conduct that

formed the basis for the parole violation." *Id.* (cleaned up). Moreover, the fact that a parole revocation might be used to increase a sentence in a future proceeding is insufficient to allege injury as "it [is] contingent upon [the defendant] violating the law, getting caught, and being convicted," and the defendant himself is "'able—and indeed required by law—to prevent such a possibility from occurring.'" *Id.* at 15 (*quoting Lane v. Williams*, 455 U.S. 624, 633 n.13 (1982)); *see also Diaz v. Duckworth*, 143 F.3d 345, 346 (7th Cir. 1998) ("[c]onsequences that are within the power of the defendant to avoid—such as a sentencing enhancement, which presupposes his deciding to commit another crime—are excluded."). Once Austin's sentence for his parole violation expired, he no longer had any "injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Spencer*, 523 U.S. at 7 (*quoting Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)).

Because the defendant has been released from custody without further supervision and faces no collateral consequences of the revocation of supervised release, this appeal is DISMISSED as moot.