**PEOPLE OF the STATE OF ILLINOIS ex rel. Jim EDGAR, Governor of the State of Illinois, and James E. Ryan, Attorney General of Illinois, Plaintiffs,**

**v.**

**The CITY OF CHICAGO, a Municipal Corporation created pursuant to the laws of the State of Illinois, and the City of Gary, a Municipal Corporation created pursuant to the laws of the State of Indiana, Defendants,**

**and**

**The State of Indiana, Evan Bayh, Governor of the State of Indiana, and the Chicago–Gary Regional Airport Authority, Defendants–Intervenors.**

**No. 95 C 3883.**

United States District Court, N.D. Illinois, Eastern Division.

Sept. 27, 1996.

Roger Philip Flahaven, Illinois Attorney General's Office, Chicago, IL, James R. Carroll, Quinlan & Crisham, P.C., Chicago, IL, for People of State of Illinois, Jim Edgar, James E. Ryan.

Mark W. Lewis, Jenner & Block, Chicago, IL, Earl L. Neal, Earl L. Neal & Associates, Chicago, IL, Gail A. Niemann, Andrew S. Mine, City of Chicago, Law Department Corporation Counsel, Chicago, IL, Michael A. Forti, City of Chicago Law Department, Chicago, IL, Susan S. Sher, Corporation Counsel City of Chicago, Chicago, IL, for City of Chicago.

Mark W. Lewis, Jenner & Block, Chicago, IL, Earl L. Neal, Earl L. Neal & Associates, Chicago, IL, Gail A. Niemann, Andrew S. Mine, City of Chicago, Law Department Corporation Counsel, Chicago, IL, Michael A. Forti, City of Chicago Law Department, Chicago, IL, Susan S. Sher, Corporation Counsel City of Chicago, Chicago, IL, Darnail Lyles, Meyer, Lyles & Godshalk, Gary, IN, Corinth Bishop, II, East Chicago, IN, for City of Gary.

George Francis Fitzpatrick, Jr., Swanson, Martin & Bell, Chicago, IL, D. William Moreau, Jr., Daniel T. Hackman, Nana Quay-Smith, Bingham, Summers, Welsh & Spilman, Indianapolis, IN, for State of Indiana, Evan Bayh.

## MEMORANDUM OPINION AND ORDER

LEINENWEBER, District Judge.

### I. PROCEDURAL BACKGROUND

Plaintiffs, the State of Illinois, and relators Governor James Edgar and Attorney General James Ryan, brought an action against the cities of Chicago, Illinois and Gary, Indiana ("Cities"), seeking declaratory and injunctive relief under federal and state law. The State of Indiana, its Governor, Evan Bayh ("Indiana"), and the Chicago–Gary Regional Airport Authority ("Authority") filed a motion to intervene as parties-defendant in order to defend the constitutionality of an Indiana statute implicated by the complaint, which the court granted without objection. The Cities moved to dismiss the action for lack of subject matter jurisdiction pursuant to F.R.C.P. 12(b)(1) and to strike and/or for a more definite statement. Due to Indiana's entrance into the lawsuit, the court postponed a ruling on the Cities' motion and ordered the parties to file supplemental briefs on the issue of whether the court had lost its original jurisdiction in light of 28 U.S.C. § 1251, which grants to the Supreme Court original and exclusive jurisdiction over "all controversies between two or more states." The court now addresses all pending matters.

### II. FACTUAL BACKGROUND

Article I, Section 10, Clause 3 of the United States Constitution states "No State shall ... enter into any Agreement or Compact with another State...." This is known as the "Compact Clause."

In 1959, Congress enacted a law that authorizes states to enter into "an agreement, not in conflict with a law of the United States, with another state to develop or operate an airport facility." 73 Stat. 333 (1959); 49 U.S.C. § 44502(e) (1996). In 1963, Illinois enacted a law which authorizes a "governmental unit," including a city, "to combine in the creation of an airport authority for the purpose of jointly supporting and operating an airport terminal" with a city in another state once that state has enacted "reciprocal

authorizing legislation." Interstate Airport Authorities Act ("IAAA"), Ill. Laws 1963, p. 2121; 70 ILCS 10/2, 10/5 (1993). In 1980, Indiana enacted a law which mirrors the form and content of Illinois'. *See* Ind.Code 8–22–4–1 *et seq.* (1982).

In 1995, the Cities entered into an agreement entitled "Compact Between the City of Chicago and the City of Gary Relating to the Establishment of the Chicago–Gary Regional Airport Authority" ("RAAC"). The RAAC created the Chicago–Gary Regional Airport Authority and vests the Authority with the power

> to jointly evaluate the Bi–State Region's need for additional Airport capacity, to jointly coordinate and plan for continued development, enhancement and operation of the Existing Airports and the development of any New Regional Airport serving the Bi–State Region and to assume the continued autonomous management and operation by the City of Chicago of the Chicago Airports and the continued autonomous management and operation by the City of Gary of the Gary Regional Airport.

RAAC § 5–5. The RAAC also permits the Cities, "through the Authority, to plan for any future additional airport capacity needed," *id.* § 5–10(f), giving the Authority the ability to "evaluate, plan, develop, secure permits, licenses and approvals for, acquire, finance, construct, equip, own, and operate new Regional Airport facilities." *Id.* § 20–10. The Authority may also enter all pertinent contracts, *id.* § 20–15, and appoint and discharge personnel "irrespective of the civil service, personnel or merit system laws of either the State of Illinois or the State of Indiana," *Id.* § 20–20.

Plaintiffs' complaint contains three counts. The first is entitled "Declaratory Judgment," and alleges that "[t]he purported compact is invalid as a matter of federal law." Cmplt. ¶ 29. It further alleges that "Defendants lack authority to enter into the purported compact," *id.* ¶ 29(a), and that "[n]either the Compact Clause nor 49 U.S.C. § 44502(e) contemplates any role to be played by a political subdivision of a state in the creation of an interstate compact." *Id.* ¶ 29(b). Count 1 also alleges that the RAAC is not a

"valid interstate compact" because "the agreement provides for unilateral modification and termination."

The court interprets Count 1 to present two distinct claims. First, plaintiffs allege that the RAAC is void because cities—as a general rule—may not enter into interstate compacts; such authority belongs only to states as sovereigns. Second, plaintiffs allege that the RAAC is void because its obligations are illusory.

The remaining counts present state law claims and a request for relief. Count 2 is entitled "Quo Warranto." It requests that Chicago show "by what warrant it exercises the alleged right to enter into" the RAAC. Count 3, entitled "Injunction," seeks to prevent Chicago from making payments under the RAAC.

The Cities respond that plaintiffs' complaint does not allege a federal cause of action. Specifically, the Cities argue that plaintiffs have not raised a federal question, have not presented a "well-pleaded" complaint, and have not alleged sufficient facts to demonstrate that they have standing to prosecute any federal claim.

With regard to the court's concern over its original jurisdiction, none of the parties believe that the case properly belongs in front of the Supreme Court. Nonetheless, the court must assure itself that jurisdiction properly lies in federal district court, despite the apparent consent of the parties. Fed. R.Civ.Pro. 12(h)(3); *Commercial Nat'l Bank v. Demos,* 18 F.3d 485, 487 (7th Cir.1994). Therefore, the court turns first to the issue of its original jurisdiction.

### III. *ORIGINAL JURISDICTION*

Title 28 U.S.C. § 1251(a) vests original and exclusive jurisdiction in the United States Supreme Court over "all controversies between two or more states," which "necessarily denies jurisdiction of such cases to any other federal court." *Mississippi v. Louisiana,* 506 U.S. 73, 78, 113 S.Ct. 549, 553, 121 L.Ed.2d 466 (1993). In the present case, the caption places Illinois on the left and Indiana on the right; it appears that the requirements of § 1251 are satisfied.

However, § 1251(a) encompasses only those controversies in which "the complaining State has suffered a wrong through the action of the other State, furnishing grounds for judicial redress...." *Massachusetts v. Missouri*, 308 U.S. 1, 15, 60 S.Ct. 39, 42, 84 L.Ed. 3 (1939). Moreover, the wrong suffered must be "directly caused by the actions of another State." *Pennsylvania v. New Jersey*, 426 U.S. 660, 663, 96 S.Ct. 2333, 2335, 49 L.Ed.2d 124 (1976). Additionally, the claim must have the requisite "seriousness and dignity." *Mississippi v. Louisiana*, 506 U.S. 73, 77–79, 113 S.Ct. 549, 553, 121 L.Ed.2d 466 (1992). The model dispute fit for the Supreme Court's original and exclusive jurisdiction is one between two states of such seriousness and magnitude that it would amount to "casus belli" were the states fully sovereign. *Id.* at 77, 113 S.Ct. at 552 (determining that it had original and exclusive jurisdiction over a boundary dispute waged by two states, though it arose out of a lawsuit between private parties) (citing *Texas v. New Mexico*, 462 U.S. 554, 571 n. 18, 103 S.Ct. 2558, 2569 n. 18, 77 L.Ed.2d 1 (1983)).

As previously noted, Indiana is present in the lawsuit to defend the constitutionality of its own regional airport authority statute. Despite Indiana's initial concern, plaintiffs have failed to press any constitutional attack. Though plaintiffs' "ultra vires" argument used the Compact Clause to attack indirectly the constitutionality of the IAAA (which, on its face, authorizes the allegedly "ultra vires" acts), plaintiffs' subsequent briefs fail to even cite—let alone discuss the import of—the IAAA. Due to plaintiffs' total failure to address the IAAA, the court has no choice but to deem the argument completely waived. Because the IAAA is no longer under constitutional attack, Indiana's reciprocal statute is similarly safe.

In its discretion, the court may drop a party from a lawsuit *sua sponte* whose presence no longer effects the issues being litigated. *See Lampliter Dinner Theater, Inc. v. Liberty Mut. Ins. Co.*, 792 F.2d 1036, 1045 (11th Cir.1986). Because Indiana no longer must defend the constitutionality of its statute, its presence in this lawsuit is no longer required. Therefore, Indiana is dropped as

party-defendant pursuant to Fed.R.Civ.Pro. 21.

This leaves only a controversy between Illinois and Indiana's governor, Evan Bayh. Bayh sought intervention pursuant to Fed. R.Civ.Pro. 24(b)(2), which permits—but does not mandate—a court to allow the intervention of a state officer charged with administering a statute. The RAAC and Indiana law both authorize Bayh to appoint one member to the Authority's managing board. *See* RAAC § 15–5(a)(4); Ind.Code § 8–22–4–1(b).

The present controversy between Illinois and Bayh does not demand the attention of the Supreme Court because the Illinois' alleged injury does not arise from Bayh's actions. Illinois has not charged Bayh with any wrongdoing or usurpation. The complaint details no allegations of misconduct or *ultra vires* actions by Bayh; rather, it asserts broad theories of usurpation of authority by the Cities. His role in this lawsuit is to protect his interest in the Authority's continued existence. *Cf. Ceres Gulf v. Cooper*, 957 F.2d 1199, 1204 (5th Cir.1992) (reversing denial of intervention by state officer who sought to protect his statutory authority to interpret and administer law). Bayh's presence does not alter the underlying allegations in this action, and the gravamen of the complaint remains the same: the Cities—not Bayh—usurped plaintiffs' authority.

Therefore, this action fails to present a "controversy between two states" of such "seriousness and dignity" so as to demand the Supreme Court's original and exclusive jurisdiction under 28 U.S.C. § 1251(a).

### IV. *MOTION TO DISMISS*

#### A. *Federal Question*

The court now turns to the Cities' motion to dismiss for lack of subject matter jurisdiction and/or for a more definite statement.

The Cities assert a lack of subject matter jurisdiction as the basis for dismissal. They first argue that plaintiffs have not raised a federal question in Count 1. They invoke the "well-pleaded complaint" rule, which denies subject matter jurisdiction "over a case in which the complaint presents

a state-law cause of action, but also asserts that federal law deprives the defendant of a defense he may raise." *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 10, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983). Where a complaint shows only "that very likely, in the course of litigation, a question under the Constitution would arise, ..." it does not allege a federal question without more. *Louisville & Nashville Ry. Co. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908).

From the face of the complaint, it appears that plaintiffs have anticipated the Cities' use of the Compact Clause to support the validity of the RAAC. Paragraph 9 alleges "Defendants have maintained the position that ... the purported Compact is authorized by and comprises federal law under the Interstate Compact Clause...." Paragraph 28(b) asserts that this position is untrue. Therefore, it appears that the complaint "asserts that federal law deprives the defendant of a defense he may raise." *See Franchise Tax Bd.,* 463 U.S. at 10, 103 S.Ct. at 2846.

■ However, in order to raise a federal question, the complaint simply must assert that a particular statute or constitutional provision affords the plaintiff relief. *Health Cost Controls v. Skinner,* 44 F.3d 535, 537 (7th Cir.1995); *see, e.g., Romero v. International Terminal Operating Co.,* 358 U.S. 354, 358, 79 S.Ct. 468, 473, 3 L.Ed.2d 368 (1959) (finding presence of federal question due to mere assertion of relief under the Jones Act).

■ Read in its best light, Count 1 does present a federal question arising under the Compact Clause. As noted above, the complaint alleges that "The purported Compact is invalid as a matter of federal law," Complt. ¶ 28, even though the complaint also states that the Cities will claim validity under the same constitutional provisions. Because plaintiffs seek relief under the Compact Clause, they have raised a federal question.

■ Nonetheless, the Cities challenge whether this claim raises a federal question on the grounds that plaintiffs have not alleged a recognized Compact Clause violation. This argument, however, goes to the legal sufficiency of the claim, not whether the

claim, itself, presents a federal question. *See Malak v. Associated Physicians, Inc.,* 784 F.2d 277, 281 (7th Cir.1986) (determining challenge to subject matter jurisdiction actually to be one attacking merits of federal claim where defendants asserted that plaintiff failed to satisfy one element of cause of action). Thus, to the extent that the Cities' motion challenges the legal merits of plaintiffs' federal case, the court will construe it to be a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.Pro. 12(b)(6). In such a case, the court assumes as true all allegations in the complaint and turns to examine the legal sufficiency of those allegations. *Health Cost Controls,* 44 F.3d at 537; *Malak,* 784 F.2d at 279–80.

■ The Cities argue that plaintiffs fail to present a claim that falls within the purview of the Compact Clause. The Compact Clause prevents states from usurping federal power through collective efforts:

> By vesting in Congress the power to grant or withhold consent, or to condition consent on the States' compliance with specified conditions, the Framers sought to ensure that Congress would maintain ultimate supervisory power over cooperative state action that might otherwise interfere with the full and free exercise of federal authority.

*Cuyler v. Adams,* 449 U.S. 433, 439–440, 101 S.Ct. 703, 707, 66 L.Ed.2d 641 (1981). States may not enter into agreements that increase their political power in an area subject to federal regulation without the consent of Congress. *United States Steel Corp. v. Multistate Tax Comm'n,* 434 U.S. 452, 471, 98 S.Ct. 799, 811, 54 L.Ed.2d 682 (1978). However, once an interstate agreement within the purview of the Compact Clause obtains Congress's consent, construction of that agreement presents a federal claim. *Cuyler,* 449 U.S. at 442, 101 S.Ct. at 708–09.

■ Two types of federal claims emerge from the Compact Clause. First, a plaintiff may allege that a particular agreement violates the Compact Clause because it lacks or exceeds Congress's consent, and is therefore, unenforceable. *See, e.g., Port Auth. Bondholders Protective Comm. v. Port of N.Y.*

*Auth.,* 387 F.2d 259, 261 (2d Cir.1967) (finding presence of federal claim where plaintiff alleged that bi-state transportation authority subject to Compact Clause acted without or in excess of congressional consent); *see also,* Engdahl, *Construction of Interstate Compacts: A Questionable Federal Question,* 51 Va.L.Rev. 987, 1027 (1965). Second, a plaintiff may allege the existence of a valid interstate compact, and assert rights that emanate from that compact. *See, e.g., Cuyler, supra* (finding presence of federal claim in prisoner's assertion of rights under congressionally sanctioned Interstate Detainer Agreement). Either claim states a federal cause of action under 28 U.S.C. § 1331. In the present case, plaintiffs attempt to state the first type.

▮ Plaintiffs assert that the RAAC is invalid because neither Congress, by enacting 49 U.S.C. § 44502(e), nor the Compact Clause permits a city to form a regional airport authority. Cmplt. ¶¶ 29(a), 29(b). This claim attempts to use the canon *expressio unius alter unius* to interpret the Compact Clause and 49 U.S.C. § 44502(e) as follows: The Compact Clause mentions only "states"; title 49 U.S.C. § 44502(e) mentions only "states"; because cities (and presumably other political subdivisions) are not "states," the Compact Clause and § 44502(e) somehow prohibit them from entering into an interstate compact to create regional airport authorities. The "gist" of this claim, according to plaintiffs, "is that the defendants have attempted to usurp the exclusive prerogative of the State to enter into a binding interstate compact." Pl.Mem. at 10.

▮ While such a claim may or may not have merit under state law, it does not present a federal cause of action. The Compact Clause applies only to agreements "directed to the formation of any combination tending to the increase of political power in the States, which may encroach upon or interfere with the just supremacy of the United States." *Cuyler,* 449 U.S. at 440, 101 S.Ct. at 707. Thus, the requirement of Congress's consent exists to allow Congress to screen attempts by compacting states to regulate or cooperate in a uniquely federal area, where such attempts would otherwise be a usurpa-

tion of federal power. That requirement does not exist to regulate—nor is it concerned with—the type of party that enters the compact.

Here, plaintiffs have failed to allege how the RAAC implicates federal—rather than state—supremacy concerns. Plaintiffs assume that congressional consent to interstate airport authorities somehow vests states with a federal cause of action to preclude their subdivisions from entering into such agreements. Although the Compact Clause does erect a procedural hurdle to prevent conspiring states from usurping federal power, plaintiffs fail to identify any federal concerns about internal disputes among states and their political subdivisions that implicate the Compact Clause.

For this reason, plaintiffs' citations to *Texas v. New Mexico,* 462 U.S. 554, 567, 103 S.Ct. 2558, 2567, 77 L.Ed.2d 1 (1983), *Cuyler, supra,* and *League to Save Lake Tahoe v. Tahoe Regional Planning Agency,* 507 F.2d 517, 523 (9th Cir.1974), *cert. denied,* 420 U.S. 974, 95 S.Ct. 1398, 43 L.Ed.2d 654 (1975) are inapposite. Each of those cases involved the determination of the rights of parties or beneficiaries to an interstate compact. Here, plaintiffs do not assert the rights of a party or beneficiary; rather they challenge the cities' ability to enter the RAAC in the first place. None of the cases they cite supports the existence of a federal cause of action under the Compact Clause to challenge a party's ability to enter into such a compact. Therefore, plaintiffs' "ultra vires" argument fails to state a federal claim in Count 1 of their complaint.

At most Count 1 states an *ultra vires* claim under state law, but plaintiffs do not make this argument. The Cities' ability to enter into the RAAC is based on the IAAA enacted by the plaintiff, the State of Illinois. *See infra.* p. 373. However, internal disputes between a state and its subdivision are quintessential matters of state law:

> Because municipal bodies are essentially creatures of the state and because the state retains the inherent power to alter, change or even to abolish them in accordance with the state's constitution and

laws made thereunder, the United States Constitution simply does not concern itself with matters of internal disagreements between a state and subdivisions created·by it ... for this area involves matters which the state is uniquely competent to resolve.

*Kelley v. Metropolitan County Bd. of Educ.,* 836 F.2d 986, 998 (6th Cir.1987), *cert. denied,* 487 U.S. 1206, 108 S.Ct. 2848, 101 L.Ed.2d 885 (1988). The present "ultra vires" dispute between Illinois and the Cities properly belongs in state court—if any forum is proper—where principles of state law alone will aid its resolution.

More complicated, however, is plaintiffs' assertion that "the purported Compact exceeds the authorization of Congress under 49 U.S.C. § 44502(e) by attempting to include multiple existing air facilities which the Authority did not develop and cannot operate." Cmplt. ¶ 29(d). As noted above, a plaintiff may allege a Compact Clause violation when an action lacks or exceeds Congress' consent. *See, e.g., Port Auth. Bondholders Protective Comm.,* 387 F.2d at 261. Plaintiffs allege that the RAAC vests the Authority with the ability to condemn lands and regulate airports beyond the Cities' geographical boundaries. This, according to plaintiffs, exceeds Congress's consent to a state entering into a compact to "develop or operate an airport facility." *See* 49 U.S.C. § 44502(e).

Though the issue of whether an action exceeds Congress's consent under the Compact Clause may state a federal claim, plaintiffs have failed to put the Cities on notice, other than by their "ultra vires" theory, as to how the RAAC exceeds § 44502(e). That section says nothing about the geographical limits on the development or operation of airport facilities. Rather, it simply grants Congress' consent to any such development. Therefore, plaintiffs' claim that the RAAC exceeds Congress's explicit authorization fails to state a federal claim as well.

In sum, plaintiffs fail to state a federal claim because they have not demonstrated how the Cities' allegedly *ultra vires* acts in any way violate the Compact Clause.

**B. *Standing***

Nonetheless, even if plaintiffs' complaint stated a federal claim under the Compact Clause, the Cities challenge plaintiffs' standing to raise such a question.

▮ In order to maintain standing to bring a federal action, a plaintiff must demonstrate that it has suffered (1) an "injury in fact" that (2) is "fairly traceable to the challenged action of the defendant" and (3) that can be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (internal citations omitted). When the cause of action arises from a statute, the plaintiff must demonstrate that its injury falls within the " 'zone of interest' sought to be protected by the statutory provision whose violation forms the legal basis for his complaint." *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 883, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990).

The Cities argue that plaintiffs have not alleged sufficiently an "injury in fact." The complaint is devoid of any allegation of injury except for one contained in ¶ 34 of Count 3's "Injunction" claim, where plaintiffs allege they "will suffer irreparable harm unless the Court grants injunctive relief." However, the complaint does not indicate the nature of the "irreparable harm." The complaint's remaining paragraphs do not describe—even in the slightest detail—how the Cities' actions injure plaintiffs.

What starkly emerges from an analysis of the standing issue is that the City has taken action pursuant to statutory authority extended by the State in the IAAA. Cities are creatures and subdivisions of the state which (with limited exceptions based on "home rule" powers granted by the Constitution of 1970 not applicable here), receive their powers from laws enacted by the state. *See City of Trenton v. New Jersey,* 262 U.S. 182, 189–90, 43 S.Ct. 534, 537–38, 67 L.Ed. 937 (1923); *Commissioners of Highways of Towns v. United States,* 653 F.2d 292, 295 (7th Cir. 1981). How plaintiffs can have standing in· federal court under the Compact Clause to contest the validity of the City's action taken pursuant to·authority granted by the plaintiff State under the IAAA, defies logic. The

State had only to repeal or amend the IAAA, not bring a federal lawsuit ignoring the IAAA's existence.

Nonetheless, plaintiffs contend that they have standing under the doctrine of *parens patriae*. In *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982), the court defined an alternative basis for a sovereign state to meet the injury in fact standing requirement. Where a state has failed to allege that it has an interest that has suffered a direct injury in fact (such as injury to state-owned property), it may assert nonetheless that it has a "quasi-sovereign" interest which has suffered a direct injury in fact. *Id.*, 458 U.S. at 602–04, 102 S.Ct. at 3266–67.

 Two types of "quasi-sovereign" interests exist. First, a state has a "quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general." 458 U.S. at 609, 102 S.Ct. at 3269. In the present case, the complaint is bereft of any allegations of this type of injury. Second, a state has a quasi-sovereign interest "in not being discriminatorily denied its rightful status within the federal system." *Id.* This type of interest lies in "ensuring that the State and its residents are not excluded from the benefits that are to flow from participation in the federal system." 458 U.S. at 608, 102 S.Ct. at 3269. Those benefits include the right to free flow of interstate commerce and the enforcement of federal laws that create benefits or alleviate hardships. *Id.*

 In their brief, plaintiffs argue that they sufficiently allege *parens patriae* standing. In attempting to fit within *Alfred L. Snapp*, they cite: (1) the "harm to the State's exclusive sovereign rights to enter into binding interstate compacts"; (2) the diminution of "the State's authority over one of its corporate entities, defendant City of Chicago"; and (3) the assurance "that an Illinois municipal corporation is kept within the limits of its lawful authority." Pl.Resp. at 12–13. First, and most importantly, none of these asserted bases for *parens patriae* standing appear in the complaint. Moreover, even if they did, each is legally insufficient.

 Plaintiffs raise their sole federal question under the Compact Clause. As previously noted, the Compact Clause prevents states from entering into agreements without the consent of Congress where the agreement tends to increase their political power in an area subject to federal regulation. *United States Steel Corp.*, 434 U.S. at 471, 98 S.Ct. at 811. Therefore, to fall within the "zone of interests" in a Compact Clause action, the plaintiff must demonstrate that either its injury arises from a state's attempt to usurp federal power or that it has rights in need of vindication pursuant to a valid interstate compact. However, none of plaintiffs' asserted bases for standing fall within this zone of interest, and none demonstrate that a violation of the Compact Clause "forms the legal basis of their complaint." *See Lujan*, 497 U.S. at 883, 110 S.Ct. at 3186.

Plaintiffs' first basis for standing is a state's alleged exclusive sovereign right to enter into interstate compacts. However, as noted above, the Compact Clause does not vest states with such a right. Therefore, it cannot provide plaintiffs with standing.

Plaintiffs' remaining two bases for standing implicate the relationship between a state and its political subdivisions. However, the Compact Clause governs the relationship between states vis-à-vis the federal government—not between states and their own political subdivisions, which, as previously noted, is exclusively a matter of state law. Because plaintiffs define their injuries solely with reference to acts by political subdivisions, neither of these asserted bases for standing implicates the Compact Clause. Therefore, plaintiffs' alleged injuries do not fall with the Compact clause's "zone of interest."

In sum, plaintiffs' complaint is devoid of any allegations to support standing. Even if the complaint alleged the types of injuries that plaintiffs described in their brief, each is legally insufficient to meet the injury-in-fact requirement for *parens patriae* standing in federal court.

Because the court has disposed of plaintiffs' federal claim, no jurisdictional basis exists for their state law claims except supple-

mental jurisdiction under 28 U.S.C. § 1367. The Seventh Circuit has cautioned against deciding supplemental state law claims on their merits where the underlying federal claim has dropped out. *See Cowen v. Bank United of Tex.*, 70 F.3d 937, 943 (7th Cir. 1995); *Olive Can Co., Inc. v. Martin*, 906 F.2d 1147, 1153 (7th Cir.1990). The standard practice is to dismiss those claims for lack of subject matter jurisdiction unless they are "easily shown to have no possible merit [such that] dismissing [them] on the merits is a time saver for everybody." *Boyce v. Fernandes*, 77 F.3d 946, 951 (7th Cir.1996). In this case, the standard practice is best followed. Therefore, plaintiffs' state law claims in Counts 2 and 3 must be dismissed without prejudice for lack of subject matter jurisdiction.

## V. CONCLUSION

The State of Indiana is dropped as party-defendant. Defendants' motion to dismiss is granted. Plaintiffs' complaint is dismissed in its entirety for lack of subject matter jurisdiction. Defendants' motions to strike and/or for a more definite statement are denied as moot.

IT IS SO ORDERED.