**UNION CARBIDE CORP., et al., Plaintiffs–Appellants,**

v.

**BOARD OF TAX COMMISSIONERS OF the STATE OF INDIANA, et al., Defendants–Appellees.**

No. 95–2396.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 25, 1995.

Decided Nov. 16, 1995.

Terrence J. Benshoof (argued), Kanter & Mattenson, Chicago, IL, G. Terrence Corident, Lawson, Pushor, Mote, Coriden & Gamso, Columbus, IN, for plaintiffs.

Marilyn S. Meighen (argued), Office of the Attorney General, Tax Division, Indianapolis, IN, for defendants.

Before BAUER, EASTERBROOK, and EVANS, Circuit Judges.

EASTERBROOK, Circuit Judge.

A provision of the Railroad Revitalization and Regulatory Reform Act of 1976 forbids discrimination against railroads in the assessment and collection of state taxes. 49 U.S.C. § 11503. The plaintiffs, which call themselves "carlines," own railroad cars that they use in their own business or lease to others. They believe that Indiana violates § 11503 in two ways: (i) by collecting the property tax on rail assets at the state level, while allowing cities and counties to collect the tax on other property; and (ii) by estimating the value of rolling stock in the state on the assessment date. The district court granted Indiana's motion for summary judgment. It concluded that the carlines' decision not to offer proof of discriminatory effective tax rates spoils their first theory of liability, and that § 11503 does not regulate the way in which states determine the amount of property subject to taxation, scuttling the second theory.

■ Indiana's Board of Tax Commissioners assesses the property of railroads, airlines, and other transportation firms, along with public utilities. The assessment for each industry is supposed to be one-third of market value. I.C. 6–1.1–1–3. The carlines do not argue that Indiana has departed from this norm in practice. They complain instead that Indiana taxes rail property directly, while allocating the assessed valuation of other industries among cities and counties, which collect taxes at rates determined locally. Such a scheme readily could entail discriminatory taxation: for example, counties could collect taxes at 3% of assessed valuation, while the state itself taxed rail property at 5% of assessed valuation. But the carlines do not argue that Indiana's rate for rail property is higher than the effective rate for other property taxed by local units of government. Instead they argue that the difference in taxing authority is unlawful *per se* under § 11503(b)(3):

(b) The following acts unreasonably burden and discriminate against interstate commerce, and a State, subdivision of a State, or authority acting for a State or subdivision of a State may not do any of them:

\* \* \* \* \* \*

(3) levy or collect an ad valorem property tax on rail transportation property at a tax rate that exceeds the tax rate applicable to

commercial and industrial property in the same assessment jurisdiction.

According to the carlines, the state is the "assessment jurisdiction" for rail property. Indiana collects a property tax at a positive rate for rail property; its rate for airline and public utility property is 0%; and as any positive number exceeds zero, the tax violates § 11503(b)(3).

Under § 11503(a)(2) an "assessment jurisdiction" is "a geographical area in a State used in determining the assessed value of property for ad valorem taxation". The State of Indiana is the "assessment jurisdiction" under this definition for railroad, airline, truck, and utility property. As the carlines see things, the conclusion that Indiana is the "assessment jurisdiction" ends matters, because the state does not collect any ad valorem property tax from non-railroad businesses. But this is not what § 11503(b)(3) says. The question under that subsection is whether the state's rate of tax on railroads "exceeds the tax rate applicable to commercial and industrial property *in* the same assessment jurisdiction" (emphasis added). Indiana's counties and other local taxing bodies are located "in" Indiana and therefore are "in" the "same assessment jurisdiction" as the one that taxes rail property.

Confining attention to the state's own collections would not aid the carlines. Indiana taxes rail property and exempts other property. *Oregon Department of Revenue v. ACF Industries, Inc.,* —— U.S. ——, 114 S.Ct. 843, 127 L.Ed.2d 165 (1994), holds that an exemption from tax differs from a tax rate of zero for purposes of § 11503. Although *ACF Industries* reserved the possibility that an exemption of all property other than railroad property would amount to forbidden discrimination, Indiana's simultaneous allocation of non-rail property to local jurisdictions makes it hard to say that Indiana has "singled out railroad property for discriminatory treatment." —— U.S. at ——, 114 S.Ct. at 851.

Although it would be possible to read "same assessment jurisdiction" as meaning that the same bureaucracy must collect taxes from both railroads and other property (after which, one supposes, the state could engage in revenue sharing with counties), the federal government usually treats states as units. How they allocate their powers—whether among departments at the state level, or between state and local authorities—is none of the national government's concern. See *Whalen v. United States,* 445 U.S. 684, 689 n. 4, 100 S.Ct. 1432, 1436 n. 4, 63 L.Ed.2d 715 (1979); *Mayor of Philadelphia v. Educational Equality League,* 415 U.S. 605, 615 n. 13, 94 S.Ct. 1323, 1331 n. 13, 39 L.Ed.2d 630 (1974); *Highland Farms Dairy, Inc. v. Agnew,* 300 U.S. 608, 612, 57 S.Ct. 549, 551, 81 L.Ed. 835 (1937); *Prentis v. Atlantic Coast Line Co.,* 211 U.S. 210, 225, 29 S.Ct. 67, 68, 53 L.Ed. 150 (1908); *Dreyer v. Illinois,* 187 U.S. 71, 84, 23 S.Ct. 28, 32, 47 L.Ed. 79 (1902); *Chicago Observer, Inc. v. Chicago,* 929 F.2d 325, 328 (7th Cir.1991). The extent to which Congress can override that principle, given the tenth amendment and considerations of inter-jurisdictional comity, is a nice question. Compare *New York v. United States,* 505 U.S. 144, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992), with *Association of Community Organizations for Reform Now v. Edgar,* 56 F.3d 791, 794 (7th Cir.1995). Section 11503 does not evince a clear decision to allocate taxing powers among units of state government; we therefore need not decide whether the national government has the power to tell states which units of government may or may not collect taxes. Section 11503 is designed to prevent discrimination against railroads. The carlines do not contend that the allocation of taxing authority in Indiana leads to a heavier effective tax rate for their property than for other transportation or utility property, and that, we conclude, is dispositive.

■ We recognize that *General American Transportation Corp. v. Kentucky,* 791 F.2d 38 (6th Cir.1986), says that if state taxes discriminate against railroads, the fact that local units of government practice offsetting discrimination against non-railroad property does not matter. Kentucky levied taxes at different rates on all business property, with the railroad tax, at $1 per $100 of assessed valuation, by far the highest. The sixth circuit held that this explicit differential violated the statute even though local governments

were not allowed to tax railroad property. Accord, *Kansas City Southern Ry. v. McNamara,* 817 F.2d 368 (5th Cir.1987) (rejecting an attempt to justify a discriminatory state property tax on railroads by pointing to their exclusion from local sales taxes), cited with approval in *Burlington Northern R.R. v. Superior,* 932 F.2d 1185, 1186–87 (7th Cir.1991). Formal discrimination by the state cannot be rescued by additional discrimination elsewhere in the system. Cf. *Connecticut v. Teal,* 457 U.S. 440, 102 S.Ct. 2525, 73 L.Ed.2d 130 (1982) (rejecting a "bottom line" defense in civil rights cases). But Indiana does not discriminate in making assessments, which it requires local governments to use. All that remains is the allocation of collections on this assessed valuation, which is nothing but a system of exemptions (rail property exempt at the local level, nonrail property at the state level). *ACF Industries* establishes that exemptions from taxation do not violate § 11503 unless they are discriminatory in practice. (The "unless" clause was left hanging in *ACF Industries,* but we assume for current purposes that substantial discrimination accomplished by exemptions would violate § 11503, as we held in *Burlington Northern.*) This means that Indiana's system may be challenged only by comparing the effective burden on rail property with the effective burden on other business property, a task the carlines have abjured. Accordingly, the carlines have not supported their claim that Indiana violates § 11503(b)(3).

█ Indiana estimates the amount of movable property in the state on March 1 of each year, the assessment date. The carlines believe that its system violates § 11503(b)(4), which forbids a state to "impose another tax that discriminates against a rail carrier providing transportation subject to the jurisdiction of the [Interstate Commerce] Commission under subchapter I of chapter 105 of this title". Suppose the state's system of estimation overcounts the number of railroad cars in the state on March 1, attributing to the carlines twice the number of cars actually present. That is no different, the carlines insist, from assessing cars at two-thirds of market value, while other property is assessed at one-third of market value. The carlines also argue that such an effect vio-

lates § 11503(b)(1), which says that a state may not "assess rail transportation property at a value that has a higher ratio to the true market value of the rail transportation property than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the true market value of the other commercial and industrial property." But assessment in Indiana is one-third of market value for all commercial property. The carlines' complaint is about discriminatory tax burdens, not discriminatory assessment, so we turn back to § 11503(b)(4).

█ The district court held that § 11503(b)(4) covers "another tax"—that is, a tax other than an ad valorem property tax— rather than another way a system of ad valorem property taxation might be discriminatory. The Supreme Court finessed a similar contention in *ACF Industries,* —— U.S. at ——–——, 114 S.Ct. at 847–48, by holding that any feature of a system of property taxation permitted by subsections (b)(1) to (b)(3) is not made unlawful by subsection (b)(4). We could say much the same—nothing in subsections (b)(1) to (b)(3) requires that the state's methods of estimating the amount of movable property within their borders be identical for rail and non-rail property, and subsection (b)(4) does not fill the gap. That Indiana uses the money it raises for a special purpose (subsidizing passenger rail transportation) rather than putting the revenues in its general fund does not turn an ad valorem property tax into "another" tax. How the state uses the money it raises is no concern of § 11503; trust funds and the like are accounting devices, while § 11503 deals with the real burden on rail property. Cf. *United States v. Turner,* 998 F.2d 534, 537 (7th Cir.1993) ("Just as the 'highway trust fund' into which gasoline taxes are deposited is an artifact of accounting, so the disposition of fines is irrelevant. There is no [economic] correspondence between sources and uses of funds."). We can imagine an exception to this principle for assessments that match the costs of delivering services to railroads. A fee for services rendered is not a tax for purposes of § 11503. *Union Pacific R.R. v. Public Utility Commission,* 899 F.2d 854

(9th Cir.1990). But Indiana's levy is not based on anything other than the value of the carlines' property; it is a pure property tax. And there is a deeper problem with an argument under § 11503(b)(4): the carlines have not offered to prove that Indiana's systems of estimation are discriminatory.

Indiana attributes rail rolling stock to its tax base according to the ratio of track miles in Indiana to trackage in the nation as a whole. For example, if a given carline dispatches cars over 200 miles of track in Indiana, and 5,000 miles of track in its entire operations, then the state attributes 4% of its rolling stock to Indiana for tax purposes. The formula for airplanes is different, using minutes on the ground rather than miles of track. The carlines tendered an affidavit by an expert who believes that Indiana could estimate the average number of cars present in the state on any given day more accurately using a different formula. Perhaps this is so; what the affidavit does *not* contend is that the formulas the state actually uses overstate the presence of rail rolling stock relative to airplanes or trucks, and therefore create a higher effective tax rate for rail property. Making a precise count of cars on a date certain would be a superhuman task and would invite the carlines to play a shell game with the states. Estimation is essential, as the carlines' own expert agrees. Section 11503(b)(4) deals with discrimination. Differences are merely inevitable. See *Burlington Northern R.R. v. Bair*, 766 F.2d 1222, 1226 (8th Cir.1985). The carlines have not presented evidence of discrimination, and the judgment of the district court is therefore

AFFIRMED.