**ILLINOIS DEPARTMENT OF TRANSPORTATION,**
Petitioner,

v.

**David HINSON, Administrator of the Federal Aviation Administration; Federico F. Peña, Secretary of Transportation; and City of Chicago, Respondents.**

No. 96–2536.

United States Court of Appeals,
Seventh Circuit.

Argued May 21, 1997.

Decided Aug. 1, 1997.

Daniel N. Malato, Mary E. Welsh (argued), Office of the Attorney General, Civil Appeals Division, Chicago, IL, for Petitioner.

Martin W. Matzen, Albert M. Ferlo, Lisa E. Jones, Department of Justice, Land & Natural Resources Division, Washington, DC, David R. Hinson, Barry Moler (argued), Federal Aviation Administration, Washington, DC, for Respondent Hinson.

Martin W. Matzen, Albert M. Ferlo, Lisa E. Jones, Department of Justice, Land & Natural Resources Division, Washington, DC, Rosalind A. Knapp, Department of Transportation, Washington, DC, for Respondent Pena.

Lawrence Rosenthal, Benna R. Solomon, Susan S. Sher, Thomas J. Bamonte (argued), Office of the Corporation Counsel, Appeals Division, Chicago, IL, Hugh Murphy, Department of Aviation–Chicago O'Hare, Chicago, IL, for Respondent City of Chicago, Department of Aviation.

Before POSNER, Chief Judge, and BAUER and MANION, Circuit Judges.

POSNER, Chief Judge.

■ A provision of the Federal Aviation Act empowers public agencies (that control airports to levy, with the permission of the Federal Aviation Administration) a "passenger facility charge" on all emplaning passengers to finance improvements either at the airport from which the passenger is emplaning or at "any other airport the agency controls." 49 U.S.C. § 40117(b)(1). The FAA has authorized the City of Chicago, which owns O'Hare Airport, to levy such a charge and to use the revenue (estimated at $1.45 million) that it will generate to finance several improvements at the Gary Regional Airport, a small and sparsely used airport in Gary, Indiana. The improvements are designed to enable the Gary airport to handle some of the freight and passenger traffic that O'Hare and the other Chicago airports are too busy to handle. Gary's airport is almost as close to downtown Chicago as O'Hare is and is closer to the south side of Chicago and to Chicago's southern suburbs. Chicago has reserved to itself control over the expenditure of the O'Hare "PFC" funds that will be spent on the improvements at Gary, and this was enough control to satisfy the FAA that the expenditure was authorized by the statute.

■ The Illinois Department of Transportation disagrees with the FAA's interpretation of the statute and asks us to set aside the agency's order authorizing the diversion to Gary of the O'Hare passenger facility charge. The first and last question we consider is whether the Department has standing to maintain this action. Federal law authorizes judicial review of the FAA's order at the behest of anyone who has a "substantial interest" in the order. 49 U.S.C. § 46110(a). At a minimum, that means someone who has the kind of interest that Article III of the Constitution has been interpreted to make prerequisite to maintaining a suit in any Article III court. This is an interest in protection against injury, where "injury" connotes (1) a palpable, ideally a

**372**

measurable, harm, (2) that is reasonably likely to be prevented, alleviated, or cured by the lawsuit, (3) to a concrete, individual, nonideological, in short weighty, interest. E.g., *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Hays v. City of Urbana*, 104 F.3d 102 (7th Cir. 1997); *Solid Waste Agency v. U.S. Army Corps of Engineers*, 101 F.3d 503, 505 (7th Cir.1996); Richard H. Fallon, Jr., Daniel J. Meltzer & David L. Shapiro, *Hart and Wechsler's The Federal Courts and the Federal System* 123–53 (4th ed.1996). Insofar as a public agency owns property or has income, the issue of its standing to sue is the same as that of an individual or a private firm complaining of economic loss. E.g., *Wyoming v. Oklahoma*, 502 U.S. 437, 448–50, 112 S.Ct. 789, 796–97, 117 L.Ed.2d 1 (1992). But in addition the agency can complain about the curtailment of its statutory powers, *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 601, 102 S.Ct. 3260, 3265, 73 L.Ed.2d 995 (1982), the institutional analogue to a restraint on a human being's freedom of locomotion, as where a state complains that a federal regulation will preempt one of the state's laws. *Alaska v. U.S. Dep't of Transportation*, 868 F.2d 441, 443 (D.C.Cir.1989).

This would thus be an easy case for standing if the Illinois Department of Transportation had a right to the revenues that the FAA is allowing Chicago to divert to the Gary airport. The Department has no such right. PFC revenues belong to the agency levying the charges, here the City of Chicago. Although the City is a creature of the State of Illinois, it is not its agent for the collection of those revenues. They do not belong to the Department or to any other organ of state government. The City has no duty to turn them over to the State, see 49 U.S.C. § 40117(b)(2), and does not do so.

Nor has the expenditure of O'Hare PFC funds in Gary any effect on any statutory authority exercised by the Illinois Department of Transportation, even the tenuous effect held to support the standing of state agencies in *Illinois v. ICC*, 713 F.2d 305, 309 (7th Cir.1983), and *Pacific Gas & Electric Co. v. FERC*, 106 F.3d 1190, 1194 (5th Cir.

1997). The Department cites to us its vague planning and promotional responsibility, 620 ILCS 5/26, 5/31, its power and duty to enforce the state's aviation laws, 620 ILCS 5/33, and its duty to cooperate with other state and federal agencies, 620 ILCS 5/27, and to conform its activities to federal law. 620 ILCS 5/29. The Department does not explain, and we do not see, how any of these powers and duties could be impeded by a modest transfer of funds from the O'Hare to the Gary airport. After argument the Department submitted a supplemental brief elaborating on its statutory powers. These include the power to close an airport if it is unsafe, 620 ILCS 5/49, the power to refuse a certificate authorizing an airport to expand, 620 ILCS 5/47, a responsibility (not further explained) to assist the FAA in developing a national plan for integrated airport systems, and control over applications by airport owners for federal financial aid. 620 ILCS 5/38.01. How any of *these* powers might be affected by the diversion of PFC funds from O'Hare to Gary equally eludes us.

The Illinois Department of Transportation controls neither the airports (a municipal responsibility) nor the airspace (a federal responsibility). It claims no right to impose its own passenger facility charges, and it has no financial stake in O'Hare. It has been more than twenty years since the State granted money to the City for O'Hare, and no applications for such grants are pending. The Department does give some money to another airport in Chicago (Midway), and it points out that if the City expended PFC revenues on that airport rather than on the Gary airport the Department might be able to save some money. But it is pure speculation that the effect of an order forbidding the expenditure of such revenues at Gary would be to induce the City to spend them at Midway; it might decide not to impose a passenger facility charge, a matter solely within its and the FAA's discretion. Therefore, even if the diversion of O'Hare PFC revenues to Indiana is an injury to the Illinois Department of Transportation, it is not an injury that we could rectify by assuming jurisdiction, and so it does not confer standing to sue. *Lujan v. Defenders of Wildlife, supra*, 504 U.S. at 562, 112 S.Ct. at 2137.

The Department argues that for every dollar the City collects in passenger facility charges, the State's entitlement to federal funds for airport improvement drops by 50 cents. *See* 49 U.S.C. § 47114(f). This is incorrect. The entitlement that is affected is not that of the State, but that of the airport's "sponsor," § 47114(f), which we assume is the City. § 47102(19)(A). But even if it were the State that would be losing 50 cents for every dollar the City collected in passenger facility charges destined for the Gary airport, the Illinois Department of Transportation would not have standing to sue because it would incur this loss whether or not the City sent the money to Gary or spent it on O'Hare. If it spent it on O'Hare, the Department would suffer the same loss of federal funds with no offsetting benefit because the Department does not give money for O'Hare.

The statutes on which the Department relies for standing establish only the Department's responsibility to do what it can, within the limited scope allowed to it, to assure that Illinois has a good system of air transportation. This responsibility is no different from that of a state tourist board to promote tourism within the state. Would such a board be entitled to intervene in a federal court proceeding in which a Chicago hotel chain was seeking to be allowed to invest in a hotel in Monaco money that the chain would otherwise spend on improving its hotels in Illinois? The answer is surely "no" (so surely that there are no cases) and it makes no difference whether the hotel is a publicly or a privately owned facility unless of course it is owned by the State. The answer is entailed by the cases that hold that a state does not have standing as the Good Shepherd of its citizens to bring suits in federal court to enforce their purely personal rights. *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez, supra,* 458 U.S. at 607, 102 S.Ct. at 3268; *Illinois v. Life of Mid–America Ins. Co.,* 805 F.2d 763, 766 (7th Cir.1986); *New York v. Operation Rescue National,* 80 F.3d 64, 71–72 (2d Cir.1996). (Even more damaging to the Department's attempt to represent the interests of the people of Illinois in good air transportation is the special rule that a state may not bring a *parens patriae* suit against the federal government. *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez, supra,* 458 U.S. at 610 n. 16, 102 S.Ct. at 3270 n. 16; *Wyoming ex rel. Sullivan v. Lujan,* 969 F.2d 877, 883 (10th Cir.1992).) A state cannot by creating an agency for the purpose of making life better in the state obtain a legal interest in every transaction to which an entity within the state is a party. Such an agency would be no different from the kind of do-good or trade association routinely denied standing despite claiming a "special interest" in the private litigation of others. *Sierra Club v. Morton,* 405 U.S. 727, 738–40, 92 S.Ct. 1361, 1367–68, 31 L.Ed.2d 636 (1972); *National Ass'n of Realtors v. National Real Estate Ass'n, Inc.,* 894 F.2d 937, 942 (7th Cir.1990); *National Taxpayers Union, Inc. v. United States,* 68 F.3d 1428, 1433 (D.C.Cir. 1995). We cannot see what difference it makes, so far as the Department of Transportation's standing is concerned, whether the City of Chicago wishes to spend $1.45 million on improving the Gary airport or United Air Lines wishes to divert some of its O'Hare flights to Midway. If the Department didn't think that the parties directly affected by such transactions were able to articulate the right arguments, it could ask for leave to participate in their lawsuits as an amicus curiae.

The main contemporary reason for having rules of standing, besides minimizing judicial caseloads and judicial interference with the life of the nation, is to prevent kibitzers, bureaucrats, publicity seekers, and "cause" mongers from wresting control of litigation from the people directly affected, *Valley Forge Christian College v. Americans United for Separation of Church & State,* 454 U.S. 464, 473, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982); *People Organized for Welfare & Employment Rights v. Thompson,* 727 F.2d 167, 173 (7th Cir. 1984), who in the present case are the airlines and passengers who pay the O'Hare passenger facility charge and use either O'Hare Airport or Gary Regional Airport, the cities of Chicago and Gary, and the Federal Aviation Administration, which administers the statute authorizing such charges. If none of these entities is concerned about the "diversion" of a tiny amount

374

of PFC revenues to an airport in an adjacent city, and so far as we know none is (at least enough to sue), we cannot see what public interest is served by entertaining a challenge by an entity whose "interest" in the matter is as wholly speculative as the Illinois Department of Transportation's. And we mean "wholly speculative," as all that the Department is able to tell us on this score is that it wants the $1.45 million spent in Illinois— without being able to say where or on what, since, as we have emphasized, the states have no say in the expenditure of PFC revenues. Of all the entities possibly affected by the "diversion," the Department appears to be the least affected (which is itself a strong reason to deny it standing to sue), and in fact incapable of specifying an actual effect. Its stake in this case is too tenuous to satisfy the requirements of Article III. Its petition for review is therefore

Dismissed.