**STATE OF ILLINOIS, Plaintiff–Appellant,**

**v.**

**CITY OF CHICAGO, Illinois, and City of Gary, Indiana, Defendants–Appellees.**

No. 96–3783.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 17, 1997.

Decided Feb. 19, 1998.

Roger Flahaven, Office of the Attorney General, Mary E. Welsh (argued), Office of the Attorney General, Civil Appeals Division, James R. Carroll, Quinlan & Crisham, Chicago, IL, for Plaintiffs–Appellants.

Earl L. Neal, Neal & Associates, Lawrence Rosenthal (argued), Benna Solomon, Susan S. Sher, Michael A. Forti, Thomas J. Bamonte, Office of the Corporation Counsel, Appeals Division, Gail A. Niemann, Office of the Corporation Counsel, Litigation Division, Chicago, IL, for City of Chicago.

Darnail Lyles, Meyer, Lyles & Godshalk, Earl L. Neal, Susan S. Sher, Michael A. Forti, Gail A. Niemann, Corinth Bishop, East Chicago, IL, for City of Gary.

Nana Quay–Smith, Karl L. Mulvaney, D. William Moreau, Jr. (argued), Bingham, Summers, Welsh & Spilman, Indianapolis, IN, George F. Fitzpatrick, Jr., Kaaren A. Kunze, Swanson, Martin & Bell, Chicago, IL, for State of Indiana.

Michael V. Casey (argued), Martin H. Redish, John M. Blim, Holleb & Coff, Chicago, IL, for Chicago–Gary Regional Airport Authority.

D. William Moreau, Jr., Daniel T. Hackman, Bingham, Summers, Welsh & Spilman, Indianapolis, IN, George F. Fitzpatrick, Jr., Swanson, Martin & Bell, Chicago, IL, for Frank O'Bannon.

Before COFFEY, EASTERBROOK and RIPPLE, Circuit Judges.

EASTERBROOK, Circuit Judge.

Since 1959 states have had standing permission to join forces with their neighbors to establish regional airports. An exercise of power under the Compact Clause (Art. I § 10 cl. 3), the statute reads: "Congress consents to a State making an agreement, not in conflict with a law of the United States, with another State to develop or operate an airport facility." 49 U.S.C. § 40121, formerly codified as 49 U.S.C. § 44502(e) (1994). In 1963 Illinois delegated its power under this statute to its "governmental units", including cities, provided that the other states to be involved in the regional authority had "reciprocal authorizing legislation". Interstate Airport Authorities Act (IAAA), 70 ILCS 10/1 to 10/7. In 1980 Indiana enacted such a reciprocal law. Ind. Code § 8–22–4–1. In 1995 the Cities of Chicago, Illinois, and Gary, Indiana, created a regional airport authority with jurisdiction over O'Hare International Airport, Midway Airport, and Meigs Field (all in Chicago), Gary Regional Airport, and any new airport to be developed by the authority. Indiana has welcomed this development; Illinois has not. Instead of repealing the 1963 delegation, enacting other legislation to curtail Chicago's home-rule powers, or substituting itself for the City as the party to the agreement, Illinois has undertaken a campaign of litigation. Its suit contesting the use at the Gary Regional Airport of funds raised from passengers emplaning at O'Hare was dismissed for want of standing. *Illinois Department of Transportation v. Hinson*, 122 F.3d 370 (7th Cir.1997). A suit contesting the decision to close Meigs Field failed on the merits, *Aircraft Owners & Pilots Ass'n v. Hinson*, 102 F.3d 1421 (7th Cir.1996), although a political compromise has kept that

downtown airport open for now. And the current suit, seeking a declaratory judgment dissolving the regional authority as an "assault on state sovereignty", likewise was dismissed for want of standing—and on the merits too. 942 F.Supp. 366, (N.D.Ill.1996).

Illinois has two objections to the Chicago-Gary agreement (which following the parties' usage we call the Compact, without suggesting that it is an interstate compact as the Constitution uses that term). First, Illinois submits that § 40121, like the Compact Clause itself, applies only to agreements between or among "States", excluding all possibility that cities may form compacts. Second, Illinois believes that, even if cities may forge agreements across state borders, Chicago and Gary exceeded their powers by signing a document that purports to preempt state law. According to the Compact, the regional airport authority is exempt from all state law other than environmental statutes and the IAAA, and is exempt as well from the ordinances of political subdivisions other than Chicago and Gary. Illinois fears that if the Compact has the status of federal law under the Constitution and § 40121, then Chicago could boss around both the state legislature and its neighboring municipalities on issues relating to airports—could, for example, override any legislation the state enacts to tax the airports, carriers, or passengers, or annex another city's land to build a new airport. Chicago and Gary (with the support of the State of Indiana and the Chicago-Gary Regional Airport Authority, both of which have intervened as defendants) contend that who exercises the power of a state is a question for the state itself to decide, see *Union Carbide Corp. v. Board of Tax Commissioners,* 69 F.3d 1356, 1358 (7th Cir.1995) (collecting cases), and that the IAAA (and the cognate Indiana law) have delegated to cities authority to act on behalf of the states. If they have exceeded the delegated authority, the cities insist, the error is one of state rather than federal law and should be dealt with by a *quo warranto* action in state court. (Illinois has advanced such a claim under the supplemental jurisdiction, 28 U.S.C. § 1367.) To this Illinois replies that the main issue is one of federal law: whether § 40121 authorizes cities to "preempt" state statutes.

What an odd duck this case is. Illinois either is attacking the validity of its own statute (the IAAA) and every agreement based on that law, or it is asserting that Chicago exceeded the powers delegated by that statute. If the latter understanding is correct, then the case arises under state rather than federal law, and the potential status of a trans-border agreement as a "compact" outside of state control would be a defense to that state-law claim. If the former understanding is best, then Illinois encounters substantial problems in addition to standing. How can a state complain about its own statute? Relieving a state of the consequences of a self-inflicted wound would be a novel mission for a federal court—especially when the state's adversary is a city, a subordinate political body. Cities generally can't sue their states (for a statement of the rule, and an exception, see *Chicago v. Lindley,* 66 F.3d 819, 823 n. 6 (7th Cir.1995)), and a claim by the state against the city has even weaker foundation, for the city exists at the state's sufferance. Even if the Compact has passed beyond the control of Illinois (because any change requires Gary's or Indiana's approval), *Chicago* is not beyond Illinois' power. Illinois could reclaim the powers Chicago now exercises, and the fact that the balance of political power in Illinois may render this impossible at the moment is a poor reason for a federal court to readjust the allocation of functions between the city and the state. Illinois does not suffer the kind of proprietary loss that justified inter-department litigation in *United States v. ICC,* 337 U.S. 426, 69 S.Ct. 1410, 93 L.Ed. 1451 (1949); its claim is based on a belief that the powers of government ought to be apportioned to one body rather than another, the sort of contention that cases such as *Director, OWCP v. Newport News Shipbuilding & Dry Dock Co.,* 514 U.S. 122, 128–29, 115 S.Ct. 1278, 1284–85, 131 L.Ed.2d 160 (1995), say must be worked out politically. Moreover, it is hard (if not impossible) to locate the source of a right of action. Illinois points to 28 U.S.C. § 1331 and § 2201, but the former is a grant of jurisdiction and the latter of a particular remedy; neither dispenses with the need to find a source of rights. (If they did, the

long-running debate about the propriety of inferring private rights of action from silent statutes would be unnecessary, and holdings such as *Blessing v. Freestone*, — U.S. —, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997), and *Suter v. Artist M.*, 503 U.S. 347, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992), would be incomprehensible.) Neither the Compact Clause nor § 40121 creates a private (or public) right of action. The usual basis of constitutional litigation, 42 U.S.C. § 1983, is unavailable to Illinois, for a state is not a "person" under that statute, see *Arizonans for Official English v. Arizona*, — U.S. —, — – —, 117 S.Ct. 1055, 1069–70, 137 L.Ed.2d 170 (1997); *Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), and therefore can be neither plaintiff nor defendant in a § 1983 case.[†] Because Illinois has not established injury, however, we do not have a case or controversy within the meaning of Article III and need not continue the search for authority to litigate.

■ Injury is an indispensable element of a case or controversy. That means a palpable harm to a concrete interest. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Illinois Department of Transportation v. Hinson*, 122 F.3d at 371–72. We held in *Illinois Department of Transportation* that Illinois could not establish injury from the transfer of funds to the Gary Regional Airport, because the money raised from emplaning passengers did not belong to the state in the first place, and it could not demonstrate any other financial consequence. Today's case is the same (non) controversy as *Illinois Department of Transportation*, but without even the pretense of a financial stake. Illinois does not object to anything the Chicago-Gary Regional Airport Authority has *done*;

it objects to the Authority's *existence*. If the existence of an unwelcome governmental body injured the state, then it would have had standing in *Illinois Department of Transportation*.

Illinois complains about the dignitary insult it perceives from the Regional Airport Authority, which it labels an "assault on state sovereignty." But what has the Authority done that injures its concrete interest? Illinois fears what the Authority might do in the future, should Illinois enact legislation the Authority opposes, but Article III does not permit federal courts to referee hypothetical disputes. Otherwise people could litigate about laws not yet enacted, indeed not yet introduced. The future effects of laws may create injury today because of the costs of preparing to operate under them, see *Virginia v. American Booksellers Association, Inc.*, 484 U.S. 383, 393, 108 S.Ct. 636, 643, 98 L.Ed.2d 782 (1988); *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); *Hays v. Urbana*, 104 F.3d 102 (7th Cir.1997), but in these cases the laws had been enacted; what Illinois fears is the outcome of a clash between laws Illinois has yet to enact and regulations the Authority has yet to adopt.

■ According to Illinois, any state concerned about the effect of preemption may litigate without the need to establish other injury; the fact that one's laws have been preempted is injury to a sovereign, the state insists. This argument falls short for two reasons. First, the Authority has not attempted to override any particular state law; the Compact proclaims the authority to do this, but a claim of authority differs from an exercise of authority. Only the exercise yields a concrete dispute. See *Raines v. Byrd*, — U.S. —, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997) (enactment of a line-item

---

[†] Section 1983 reads in part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress". Monell v. New York Department of

Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), holds that a city is a "person" under § 1983, so Chicago and Gary are proper defendants. (There is no problem of vicarious liability; the two cities are the authors of the Compact.) But only a "citizen of the United States or other person within the jurisdiction thereof" may be a plaintiff, and Illinois is neither a "citizen of the United States" nor a statutory "person".

veto power does not create a justiciable controversy; adjudication must await the use of the power). But even if the Authority had used the authority staked out in the Compact, that would not make Illinois the proper plaintiff. Suppose Illinois has a law regulating the labeling of cigarette packages, and Congress enacts a law specifying different language and preempting contrary state laws. See *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). Could Illinois sue the FDA (or Congress, or the President) to contest the federal statute? Surely not; the right litigant is not the author of the state law, but a person claiming benefits under that law, such as a smoker seeking damages from a manufacturer. That is another point of *Raines*, which held that Members of Congress may not sue to vindicate their views of legislative powers. If the President exercises a line-item veto (technically, elects not to spend appropriated funds), then the right plaintiff is the person who would have received the money. See also, e.g., *Quinones v. Evanston*, 58 F.3d 275 (7th Cir.1995), and *Mueller v. Reich*, 54 F.3d 438 (7th Cir.1995), vacated on unrelated grounds under the name *Wisconsin v. Mueller*, —— U.S. ——, 117 S.Ct. 1077, 137 L.Ed.2d 212 (1997) (both cases holding that the right defendant is the person claiming a benefit under a law, rather than the author of a law or regulation). Cf. *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 304–09, 114 S.Ct. 1510, 1515–18, 128 L.Ed.2d 274 (1994).

Forget the Compact Clause for a moment. If Chicago were to legislate inconsistently with a state statute—for example, declining to indemnify an employee held liable for a constitutional tort, when state law provided for indemnification, see *Wilson v. Chicago*, 120 F.3d 681 (7th Cir.1997)—and if this exceeded the city's home-rule powers, the right litigant would be the person who would recover under the state law but not under the ordinance. The State's bare disagreement with the City's ordinance would be a political rather than a legal dispute. Just so here. If the Regional Airport Authority should decide to close Meigs Field despite a state law requiring it to remain open, the right plaintiff would be a pilot who wanted to land there or some other injured person, not the State of Illinois. A role as lawmaker does not confer a role as litigant in federal court.

■ Although the district court likewise concluded that Illinois had not presented a justiciable controversy, it also expatiated about the merits of the dispute, opined that Illinois' arguments were unpersuasive, and entered this judgment: "IT IS ORDERED AND ADJUDGED that judgment is entered in favor of the defendants' [sic] and against the plaintiffs' [sic]." Illinois asked the district judge to conform the judgment to the jurisdictional holding, so that it could litigate the merits in state court (if more relaxed notions of justiciability prevail there) or on a more propitious occasion (if in the future it should suffer injury). Illinois also wanted the judgment to be explicit that the state-law *quo warranto* claim had not been addressed at all. The district judge refused to amend the judgment, stating:

> Although the opinion [discusses] how plaintiffs lacked standing to pursue their claim even if they had stated one, the primary thrust of the opinion is that plaintiffs failed to state a claim upon which relief could be granted. For that reason, plaintiffs' federal claim is dismissed for failure to state a claim. Plaintiffs' state law claims are dismissed, not on the merits, but for lack of subject matter jurisdiction. Because dismissal for failure to state a claim is a decision on the merits, entry of final judgment was proper.

■ Because the state-law claim was dismissed for want of jurisdiction (though it would have been more accurate to say that the court relinquished supplemental jurisdiction under 28 U.S.C. § 1367(c)), the judgment should have reflected this disposition. A judgment under Fed.R.Civ.P. 58 must be self-contained. This judgment dismisses the complaint on the merits and reserves nothing for decision elsewhere; it therefore does not implement the district judge's stated plan. What is more, a court is not free to decide the merits when there is no justiciable controversy. Subject-matter jurisdiction is the first question in every case, and if the court concludes that it lacks jurisdiction it must proceed no further. To set things straight,

we vacate the judgment and remand with directions to enter a new judgment dismissing the federal claim for lack of a case or controversy, and relinquishing supplemental jurisdiction of the state claim.

RIPPLE, Circuit Judge, concurring.

This case presents a very unique situation. It calls for a very narrow disposition if we are to avoid unnecessary and questionable twists in difficult areas of law that ought to be decided only when squarely presented by the record. Here, the State of Illinois cannot come close to demonstrating that it has a sufficiently concrete and particularized injury to satisfy the injury prong of Article III standing analysis. *See Bennett v. Spear,* —— U.S. ——, ——, 117 S.Ct. 1154, 1163, 137 L.Ed.2d 281 (1997). First, the problem Illinois presents is one of its own making and, as matters stand now, entirely within its own powers to remedy. The City of Chicago was only able to create the alleged assault on Illinois' sovereignty because of the explicit authorization granted to it by Illinois in the IAAA. Because Chicago is a subordinate entity of the State, Illinois may revoke Chicago's authority to enter into such agreements by repealing the IAAA or by taking some other legislative action.

Perhaps more importantly, Illinois can point to no specific action by the Authority that contravenes its laws or threatens, in any immediate way, a concrete interest of the State. Although the Compact appears to claim the authority to take such action,[1] as my colleagues note, "a claim of authority differs from an exercise of authority." *Ante* at 477. In this setting, that difference is fatal to Illinois' case. The injury alleged here, an abstract assault on Illinois' sovereignty by the Authority, is simply too hypothetical at this stage to constitute injury.

The suggestion in the majority's discussion that Illinois could never allege sufficient injury to have standing is far too speculative to warrant, or permit, definitive adjudication at this time. Had the Authority taken irreversible action, ostensibly preemptive of state law[2] and detrimental to the sovereignty of the State of Illinois, the State might well have the sort of injury that would give it standing to obtain a declaration of its rights in federal court. *See Illinois Dep't of Transp. v. Hinson,* 122 F.3d 370, 372 (7th Cir.1997) (citing *Alaska v. United States Dep't of Transp.,* 868 F.2d 441, 443 (D.C.Cir. 1989) for the proposition that a state has standing where it "complains that a federal regulation will preempt one of the state's laws"); *see also Alfred L. Snapp & Son, Inc. v. Puerto Rico,* 458 U.S. 592, 607–08, 102 S.Ct. 3260, 3269, 73 L.Ed.2d 995 (1982) (stating, in the context of state standing in *parens patriae* actions, that states have an "interest in securing observance of the terms under which it participates in the federal system").

Because the disposition of this case properly rests on the threshold issue of standing, it is unnecessary to reach the important and delicate question of whether Illinois would have, given the appropriate injury, a cause of action under the Compact Clause and 49 U.S.C. § 40121. We ought to leave that nuanced issue for another day when it is presented in more concrete form and when it is necessary for the adjudication of the case before us.

To the extent that my colleagues rest their decision on the absence of a justiciable question because Illinois lacks standing, I join the judgment of the court.

---

1. The Compact states that, "[e]xcept as otherwise provided in this Compact, all laws of the State of Illinois that would apply to the Authority as an Illinois political subdivision, municipal corporation and unit of local government shall not apply to the Authority." R.1, Ex. at 37.

2. *See Cuyler v. Adams,* 449 U.S. 433, 438, 101 S.Ct. 703, 706–07, 66 L.Ed.2d 641 (1981).