In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-3183

INDIANA PROTECTION AND ADVOCACY SERVICES,

*Plaintiff-Appellee,*

*v.*

INDIANA FAMILY AND SOCIAL SERVICES
ADMINISTRATION, *et al.*,

*Defendants-Appellants.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:06-cv-1816-LJM-TAB—**Larry J. McKinney**, *Judge.*

ARGUED JANUARY 20, 2009—DECIDED JULY 28, 2009

Before EASTERBROOK, *Chief Judge*, SYKES, *Circuit Judge*,
and KENDALL, *District Judge.*[*]

EASTERBROOK, *Chief Judge.*    Each state that accepts
federal grants under the Developmental Disabilities
Assistance and Bill of Rights Act must establish "a system

---

[*]   Of the Northern District of Illinois, sitting by designation.

to protect and advocate the rights of individuals with developmental disabilities." 42 U.S.C. §15043. A second statute, the Protection and Advocacy for Individuals with Mental Illness Act, 42 U.S.C. §§ 10801–51 (PAIMI), provides extra funding for systems established under §15043. A system that receives money under §10803 is entitled to investigate "incidents of abuse and neglect of individuals with mental illness" (§10805(a)(1)(A)) and, to carry out its investigations, to see patient-care records, unless a legal guardian is in charge of the patient's interests. 42 U.S.C. §§ 10805(a)(4), 10806. Indiana has taken the federal grants. Its system is called Indiana Protection and Advocacy Services ("Advocacy Services" for short).

Advocacy Services asked for records about J.Y.G., a mentally disabled patient at LaRue Carter Memorial Hospital. J.Y.G. had died, and Advocacy Services wanted to learn whether she was a victim of abuse, so that it could propose improvements in medical procedures. The Hospital, a part of the state, see Ind. Code §12-7-2-184, declined to furnish all of the records that Advocacy Services wanted. Some of them are covered by state privacy protections, the Hospital asserted, and the disclosure of others would violate the privacy interests of J.Y.G.'s parents. Advocacy Services then filed this suit in federal court, naming as defendants not only the Hospital but also the Indiana Family and Social Services Administration (which superintends the Hospital), plus several state officials. The district court held that defendants must hand over the records, because J.Y.G. was an adult at the time of death and her parents had not been appointed as her legal guardians. The absence of a

guardian brought J.Y.G. within the scope of Advocacy Services' authority under §10805(a)(4) and 42 C.F.R. §51.2, the commentary to which says that parents are deemed guardians of minor children but not of adult children, unless the parents are appointed to that role by a court.

Defendants (collectively "Indiana") contend on appeal that the regulation is invalid and that parents should be treated as guardians of their (mentally disabled) adult as well as their minor children, whether or not a court appoints them to that role. If J.Y.G.'s parents were her guardians, then Advocacy Services needs their consent. Disclosure without consent, Indiana maintains, would violate the parents' constitutional and statutory rights.

Underneath this apparently simple dispute lies a bushel full of issues that the parties did not mention in the district court, or this court. For example: How does Advocacy Services, which describes itself as an ombudsman rather than a law-enforcement agency, have standing to obtain information that pertains to J.Y.G.? What is Advocacy Services' injury? (The answer may be that the lack of information is injury in itself; this argument has carried the day under the Freedom of Information Act, and we need not decide whether it applies to §10805 and §10806 too.) Conversely, why is Indiana entitled to assert the privacy interests of J.Y.G.'s parents? They can speak for themselves. It is not as if Advocacy Services wanted to rummage through the parents' diaries. The medical records are already in the possession of state government, and allowing another state agency to see them differs from disclosing them to

the public, which Advocacy Services is forbidden to do. 42 U.S.C. §10806(a), (b). Cf. *Bowen v. Roy*, 476 U.S. 693 (1986).

Then there is the question whether Advocacy Services is entitled to sue in federal court. Neither federal statute gives "systems" an express right of action. These statutes are enacted under the Spending Clause, and the usual way in which such laws are enforced is by withholding grants from states that do not satisfy the conditions. See *Brunner v. Ohio Republican Party*, 129 S. Ct. 5 (2008); *Gonzaga University v. Doe*, 536 U.S. 273 (2002); *Alexander v. Sandoval*, 532 U.S. 275 (2001). Cf. *Pennhurst State School & Hospital v. Halderman*, 451 U.S. 1 (1981). In response to a request for supplemental briefs, Advocacy Services and the United States (as amicus curiae) have argued that §§ 10805 and 10806 are specific enough to create personal rights that are enforceable through litigation, under the approach of *Wilder v. Virginia Hospital Ass'n*, 496 U.S. 498 (1990), and *Wright v. Roanoke Redevelopment & Housing Authority*, 479 U.S. 418 (1987). And four courts have held that these statutes create specific federal rights—though none of the four cites *Wilder*, *Wright*, *Gonzaga*, or *Alexander*. See *Protection & Advocacy for Persons with Disabilities v. Mental Health & Addiction Services*, 448 F.3d 119 (2d Cir. 2006) (Sotomayor, J.); *Pennsylvania Protection & Advocacy, Inc. v. Houstoun*, 228 F.3d 423, 428 (3d Cir. 2000) (Alito, J.); *Missouri Protection & Advocacy Services v. Missouri Department of Mental Health*, 447 F.3d 1021 (8th Cir. 2006); *Center for Legal Advocacy v. Hammons*, 323 F.3d 1262, 1272 (10th Cir. 2003).

All four of these decisions assume that, if the rights in §§ 10805 and 10806 are specific, then they must be enforceable in federal court. But this begs an important question. Usually statutes that induce state cooperation through the lure of federal grants leave to states the implementation of the grant's conditions. See *South Dakota v. Dole*, 483 U.S. 203 (1987). The Protection and Advocacy for Individuals with Mental Illness Act may or may not follow that approach—yet another question that the parties have not addressed. The statutory language is equivocal. Section 10805(a)(1), for example, says that the system "shall . . . have the authority to . . . investigate incidents of abuse" and obtain records. The word "shall" in such a construction could mean that the national government bestows these powers on any "system" that receives a federal dime. Or it could mean that, to qualify for a grant, the state "shall" ensure that the system can do all of the listed things. That's the norm for strings attached to federal grants. Yet the parties' supplemental briefs agree that Indiana has not enacted legislation, or promulgated regulations, giving Advocacy Services the powers listed in §§ 10805 and 10806.

Private rights of action to enforce spending legislation are derived through 42 U.S.C. §1983 and the approach of *Maine v. Thiboutot*, 448 U.S. 1 (1980). Section 1983 authorizes federal courts to enforce statutes, as well as the Constitution, against misbehaving state actors. The Supreme Court concluded in *Wilder* and *Wright* that spending statutes that contain personal rights come within §1983, as understood in *Thiboutot*. But Advocacy Services is unable to use §1983, because Advocacy

Services is *itself* a state actor, and thus not a "person" for the purpose of §1983. See *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989). Only "persons" can sue under §1983, and the upshot of this is that §1983 cannot be used by one branch of a state to sue another. See *Illinois v. Chicago*, 137 F.3d 474 (7th Cir. 1998). Yet that is exactly what Advocacy Services is trying to do. This suit might as well be captioned "Indiana v. Indiana*." Virginia Office for Protection and Advocacy v. Reinhard*, 405 F.3d 185 (4th Cir. 2005) (*Virginia I*), holds that a "system" established under §15043 cannot sue another state agency in federal court to enforce §10805 or §10806. We agree with that conclusion, which means that the other issues we have identified need not be resolved. (There is no priority among reasons for deciding that a suit does not belong in federal court. See *Sinochem International Co. v. Malaysia International Shipping Corp.*, 549 U.S. 422 (2007). Any one reason not to decide the merits will do, even if some of the unresolved issues are jurisdictional.)

Advocacy Services denies that it is suing under §1983. It contends that the claim arises directly under federal law—§§ 10805 and 10806. This does not help, because those sections lack a right of action. It is hard to see where the right of action comes from, if not §1983. That's why *Wright* and *Wilder* both relied on *Thiboutot*. So the fact that Advocacy Services is not a "person" is conclusive against this federal action. Indiana might have established its "system" as a private entity, the way legal services corporations are organized. See 42 U.S.C.

§10805(c). Some other states have done this.[†] But because Advocacy Services is a public agency rather than a private corporation or foundation, it cannot use §1983 and must sue in state rather than federal court.

The eleventh amendment provides another obstacle to a federal-court action. The Supreme Court understands this amendment to cover suits based on federal law. *Hans v. Louisiana*, 134 U.S. 1 (1890). Occasionally Congress has specified that a federal law supersedes states' sovereign immunity. The Supreme Court has recognized two such instances: statutes enforcing the fourteenth amend-

---

[†] Wisconsin is among them. See *Disability Rights Wisconsin, Inc. v. Wisconsin Department of Public Instruction*, 463 F.3d 719, 722 (7th Cir. 2006), which describes Wisconsin's system as a "nonprofit stock corporation". Our opinion held that a protection and advocacy system is entitled to information without consent by affected persons. The opinion assumed that there is a right of action under federal law and that relief is proper against a state agency. None of the briefs contested those matters, and as they do not affect subject-matter jurisdiction the panel was not obliged to address them on its own. See *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005) (existence of a private right of action is not a jurisdictional question); *Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 613 (2002) (ability of states to waive the defense of sovereign immunity shows that the issue is not jurisdictional). Moreover, even if these subjects were jurisdictional, the fact that they have been overlooked does not establish a holding on the subject. See *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 91–92 (1998); *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33 (1952).

ment, see *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976), and statutes implementing the bankruptcy power, see *Central Virginia Community College v. Katz*, 546 U.S. 356 (2006). But Advocacy Services does not contend that this litigation rests on §5 of the fourteenth amendment or the bankruptcy clause. Statutes implementing other clauses, including the commerce and spending powers, remain subject to the eleventh amendment. See *Seminole Tribe v. Florida*, 517 U.S. 44 (1996). A state's decision to accept federal funds is not enough, standing alone, to waive the state's immunity from suit, see *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 246–47 (1985). Congress occasionally insists that states submit to suit as a condition on the receipt of federal money, see, e.g., 42 U.S.C. §2000d–7, but Advocacy Services does not contend that any of the statutes under which it operates requires such a waiver or that Indiana has otherwise consented to be sued in federal court on the claim in this litigation.

   Plaintiffs often step around the eleventh amendment by seeking prospective relief against state officials who disregard federal statutes. See *Ex parte Young*, 209 U.S. 123 (1908). That won't work for claims against the Hospital and the Indiana Family and Social Services Administration, which are parts of the State of Indiana rather than officeholders. Advocacy Services has not invoked *Ex parte Young* even with respect to the three natural persons it has named as defendants, because it wants a remedy for a concrete injury, not an injunction governing public officials' future conduct. The Supreme Court has held that the eleventh amendment applies to

a plaintiff's efforts to obtain a turnover order for property in a state's possession (at least when the state has a "colorable claim" to a possessory interest). See, e.g., *California v. Deep Sea Research, Inc.*, 523 U.S. 491 (1998), and *Florida Department of State v. Treasure Salvors, Inc.*, 458 U.S. 670 (1982) (both collecting cases). Yet that's the sort of remedy Advocacy Services wants. See also *Virginia Office for Protection and Advocacy v. Reinhard*, 2009 U.S. App. LEXIS 11737 (4th Cir. June 2, 2009) (*Virginia II*), at *14–31 (*Ex parte Young* does not permit "systems" to obtain information from state agencies).

Because Advocacy Services wants information, the Supreme Court's treatment of intellectual-property claims is informative. And the Court held in *Florida Prepaid Postsecondary Education Expense Board v. College Savings Bank*, 527 U.S. 627 (1999), that the eleventh amendment blocks enforcement of patent claims against states and their agencies. We do not see any reason why patent holders should be turned away on grounds of sovereign immunity while other demands concerning information in state hands would be unaffected by that doctrine.

And we add, as did *Virginia II*, that the Supreme Court has never used *Ex parte Young* to let one arm of a state sue another. For private parties affected by states' failure to implement federal law, prospective equitable relief using the legal fiction that the defendant "isn't really the state" may be the only recourse. Intramural disputes among governmental bodies can and should be worked out in political ways—or through the state courts, if a state chooses that method of dispute resolution.

Some future decision will need to wrestle with the problems that arise when a "system" established as a private organization sues in federal court to obtain information from a private medical provider, or when a "system" sues its home state in state court. This suit, between one state agency and another, is outside the scope of §1983 and blocked by the eleventh amendment. The judgment of the district court is vacated, and the case is remanded with instructions to dismiss for want of jurisdiction.